

Attorneys at Law

David W. Garland
Tel: 212.351.4708
Fax: 212.878.8708
dgarland@ebglaw.com

January 21, 2018

**BY ECF**
Honorable Paul G. Gardephe
United States District Judge
United States Courthouse
40 Foley Square
New York, NY 10007

Re:     **Ruth Rojas Duarte v. St. Barnabas Hospital, 15-CV-6824 (PGG)**

Dear Judge Gardephe:

We represent Defendant St. Barnabas Hospital ("Hospital") in the above-identified matter. We submit this letter in response to Plaintiff's emergency letter motion for a conference call this afternoon. (Dkt. 134). The Court has requested that counsel be prepared to address the issues raised therein tomorrow morning at 9:15 a.m. and we submit this letter to set forth the Hospital's position in writing.

**A.  The Hospital's Submission Earlier Today**

As the Court is aware, the letter that we submitted to the Court this morning responded to the Court's request on Friday afternoon for clarification regarding the parties' requested jury instructions and invitation for further briefing on the admissibility of certain exhibits discussed during the Final Pre-trial Conference on Friday morning. Briefly summarized, our letter set forth the following:

1. The Court had noted that the Hospital had not asked for a jury instruction on the *Faragher/Ellerth* defense and Your Honor's clerk asked during Friday afternoon's conference call with counsel if one was requested. We responded in our letter earlier today that one was not requested (confirming the requested instructions we had submitted almost three weeks ago), and to avoid any confusion, formally withdrew that affirmative defense (the Ninth Defense in the Hospital's Answer).

2. In further response to the questions raised during Friday afternoon's call, the Hospital similarly formally withdrew its "condonation" defense under the New York State Human Rights Law (the Tenth Defense). Again, the Hospital had not asked for a jury

Honorable Paul G. Gardephe
January 21, 2018
Page 2

    instruction on that defense either, so again, nothing has been added to the requested jury instructions on this issue.

3. During the Final Pre-Trial Conference on Friday morning, the Court addressed the admissibility of two exhibits, PX-13 and PX-15.  Plaintiff had argued that these exhibits were relevant to the *Faragher/Ellerth* and condonation defenses.  The Court noted that the Hospital had not responded to these arguments and stated:

> If the defendant intends to contest at trial whether it had knowledge of the alleged discrimination suffered by plaintiff, or intends to argue that plaintiff did not access available avenues for reporting discrimination, Plaintiff's exhibits 13 and 15 may be relevant to demonstrate knowledge. I reserve decision concerning these exhibits *pending further briefing from defendant as to these matters*.

(Final Pre-Trial Conference Tr. at 10) (Emphasis added).

As instructed, the Hospital responded in this morning's letter that it was formally withdrawing the defenses to which knowledge would be relevant (consistent with the requested jury instructions originally submitted), and therefore, reasserted its position that the exhibits in issue, PX-13 and PX-15, are irrelevant and should not be admitted.  Consistent with the foregoing, the Hospital indicated that it would redact DX-H to remove those parts of the harassment policy regarding the complaint procedures.

Plaintiff contends that she is confused by the Hospital's answers and then argues that the Court should admit PX-13 and PX-15 into evidence.  Accordingly, the Hospital addresses herein Plaintiff's confusion and her arguments regarding PX-13 and PX-15.

### B. The Existence of the Harassment Policy Is Relevant to Remaining Issues

The withdrawal of the Ninth and Tenth Defenses does not affect whether the Hospital maintained a policy against discrimination, whether its own witnesses were aware of that policy, whether they conducted themselves consistent with the policy.  These facts go to the question of liability.  For example, in connection with the Hospital's presentation of evidence that the comments attributed to Edgardo Quinones did not occur, he should be permitted to testify that the Hospital had a policy against harassment based on disability and national origin, he was aware of it, and conducted himself in accordance with that policy, *i.e.,* that he would never have said the things being attributed to him. Similarly, Milagros Arce-Tomala should be permitted to testify that the Hospital had a policy against harassment based on disability and national origin, she was aware of it, and if she had heard Mr. Quinones repeatedly saying the things attributed to him by Plaintiff, she would have conducted herself in accordance with the policy, *i.e.*, she would have put a stop to it.

Separately, the existence of a non-discrimination and non-harassment policy is relevant to the question of the claim of punitive damages against the Hospital. "Punitive damages [under Title VII] are limited . . . to cases in which the employer has engaged in intentional discrimination and has done so 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" *Kolstad v. America Dental Ass'n,* 527 U.S. 526, 529-30 (1999). Evidence that the Hospital maintained a non-discrimination and non-harassment policy is important to showing that it did not engage in intentional discrimination with malice or reckless indifference to federally protected rights. Just as significantly, as set forth in the Hospital's proposed jury instruction and as explained at length in *Kolstad,* 527 U.S. at 539, 541-44, 545, even if Plaintiff proves that she was subjected to an unlawful hostile work environment by Mr. Quinones, the Director of DCCS, and that liability is, therefore, attributed to the Hospital under the strict liability theories of the statutes in question,[1] the punitive damages analysis does not similarly involve strict liability. Rather, punitive damages will still require an imputation of liability to the Hospital for such conduct. Mr. Quinones was in charge of a sub-unit (DCCS) of a sub-unit (Fordham-Tremont Mental Health) of the Hospital. Plaintiff will have to show that the Hospital itself authorized or approved the wrongful acts of Mr. Quinones, because Quinones was not a sufficiently high level employee to, in essence, "authorize" his *own* conduct on behalf of the Hospital such that the Hospital could be held liable for punitive damages if Plaintiff proves her case.

### C. PX-13 and PX-15 Should be Excluded from Evidence

Plaintiff's argument that PX-13 and PX-15 should be admitted under the hearsay exception for then-existing emotional condition under Fed. R. Evid. 803(3) should be rejected. Rule 803(3) provides: "A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will." The only statement in PX-13 regarding Plaintiff's emotional state is where she states that, "As I read my evaluation, I felt disappointed and discriminated by bias remarks of my culture and language." This statement is clearly limited to the evaluation itself and not to any alleged harassment by Mr. Quinones based on her hearing or accent during staff meetings, and thus, is irrelevant to the central issue to be tried in the case. PX-15 refers to Plaintiff being "embarrassed." The rest of the relevant portion of these "rebuttals" are simply factual

---

[1] Under Title VII, ADA and NYCHRL, the analysis involves strict liability, *i.e.*, if Plaintiff proves that she was unlawfully harassed by Mr. Quinones, because he had managerial responsibility over her in his role as Director of DCCS, then the Hospital will be liable. *See Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 440 (2d Cir. 1999) *(citing Faragher* and *Ellerth)* (Title VII); *Monterroso v. Sullivan & Cromwell, LLP,* 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008); (ADA); *Zakrzewska v New School*, 14 NY3d 469 (2010) (NYCHRL).

Honorable Paul G. Gardephe
January 21, 2018
Page 4

descriptions of what allegedly happened — precisely what they cannot be admitted to prove — and do not shed any light whatsoever on plaintiff's mental or emotional state of mind.

In addition, case law interpreting Rule 803(3) indicates that this hearsay exception does not apply in the manner in which Plaintiff is attempting to use it. It is meant for contemporaneous expressions of an emotional state; spontaneous, front-facing statements, not descriptions of the past. *United States v. Cardascia*, 951 F.2d 474, 487 (2d Cir. 1991)("[T]he reasons for the state of mind exception focus on the contemporaneity of the statement and the unlikelihood of deliberate or conscious misrepresentation."). Both of these exhibits, on the other hand, were written several days after, and in response to, a particular event – a performance evaluation in PX-13 and a disciplinary warning in PX-15. PX-15, in particular, appears to refer to alleged harassment over some unspecified period of time, but quite clearly not contemporaneously with the writing of the document. Both documents were written after obvious thought and deliberation, and therefore are susceptible to deliberate misrepresentation. As such, Plaintiff's argument is a transparent attempt to circumvent the hearsay rule to try to corroborate her testimony about being harassed because of her hearing disability and national origin.

Thank you for Your Honor's courtesies in this matter.

Respectfully,

/s/ *David W. Garland*
David W. Garland

cc: Megan Goddard (via ECF)
Bennitta Joseph (via ECF)
Bruce Gitlin (via ECF)
Gabriella Vinci (via ECF)
John F. Fullerton III (via ECF)
Adriana Kosovych (via ECF)

Firm:45228914