

| | Barbara H. Trapasso | Philip A. Byler |
| Ira S. Nesenoff | Ariya M. Waxman | *Senior Litigation Counsel* |
| Andrew T. Miltenberg | Tara J. Davis | Megan S. Goddard |
| | Diana R. Warshow | *Counsel* |
| | Gabrielle M. Vinci | Rebecca C. Nunberg |
| | Robert D. Werth | *Counsel* |
| | Jeffrey S. Berkowitz | Marybeth Sydor |
| | Kara L. Gorycki | *Title IX Consultant* |

January 24, 2018

**VIA ELECTRONIC FILING**
The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square, Courtroom 705
New York, New York 10007
Fax: (212) 805-7986

Re:   **Ruth Rojas Duarte v. St. Barnabas Hospital (Civil Action No.: 15-cv-6824)**
_____

Dear Your Honor:

The undersigned is counsel to plaintiff Ruth Rojas Duarte ("Plaintiff") in the above referenced matter.  Pursuant to Your Honor's request, we write to supplement Plaintiff's proposed jury instructions with the following proposed instructions.

Preliminarily, Plaintiff strongly objects to Defendant's recent request to include a proposed instruction regarding the <u>Faragher/Ellerth</u> Affirmative Defense. On January 21, 2018, after a conference with Your Honor's law clerk, Defendant submitted a letter to the court specifically requesting that no instruction be given to the jury regarding the <u>Faragher/Ellerth</u> Affirmative Defense. Specifically, Defendant stated in a letter dated January 21, 2018:

> During the call with Your Honor's clerk on Friday afternoon, he noted that the Hospital had not included a *Faragher/Ellerth* jury charge (related to the Ninth Defense in the Hospital's Answer to the Amended Complaint), and sought clarification from the Hospital whether such charge was requested. **The Hospital does not request such an instruction**. Further, to avoid any confusion on this issue, **the Hospital formally withdraws its Ninth and Tenth defenses asserted in its Amended Answer to (the *Faragher/Ellerth* affirmative defense and the New York State Human Rights Law condonation defense, respectively) and <u>will not adduce evidence in support of those defenses at trial</u>**…

In light of Defendant's representation to the court that it withdrew its Ninth and Tenth Affirmative Defenses, Plaintiff has prepared her case and introduced evidence accordingly.



Moreover, as a consequence of Defendant's withdrawal of its Ninth and Tenth defenses, Your Honor reserved decision regarding the admissibility of certain evidence, namely PX-13 and PX-15, which would have been, as Your Honor previously noted, relevant to rebut Defendant's Ninth and Tenth defenses. Plaintiff has prepared her case and the evidence has been elicited in accordance with the remaining asserted defenses and claims in this action, following Defendant's withdrawal of its Ninth and Tenth defenses on the eve of trial.

Now, potentially on the eve of jury deliberations, Defendant seeks to re-instate its Ninth and Tenth defenses, without first advising Plaintiff's counsel or seeking leave to do so from the Court, and requests a charge related to the Faragher/Ellerth defense. Plaintiff vehemently objects to Defendant's request.

## I.     Imputing Liability to The Hospital

As requested by the Court, Plaintiff provides the following proposed instructions regarding the Hospital's liability pursuant to the remaining claims and defenses in this Action[1]:

> In this action, Plaintiff seeks to hold the Hospital responsible for the actions of her supervisors, Edgardo Quinones and Milagros Arce-Tomala, whom she alleged created a hostile work environment on the basis of her disability and/or national origin. If you find that Plaintiff has established that both or either Ms. Arce-Tomala and Mr. Quinones subjected Plaintiff to a hostile work environment, you must also determine whether the Hospital may be held responsible for that hostile work environment. I will now explain the circumstances under which you may find the Hospital responsible for both or either of Mr. Quinones' and Ms. Arce-Tomala's conduct.
>
> **Title VII Instruction:** In this case, you have heard testimony, and the parties have stipulated that Milagros Arce-Tomala was the Assistant Director of DCCS and that Edgardo Quinones was the Director of DCCS during Plaintiff's employment. You have also heard testimony that while employed in these roles, both Ms. Arce-Tomala and Mr. Quinones were supervisors in the DCCS Program. Under Title VII, a company is strictly liable, meaning automatically liable, if the discriminatory actions are perpetrated by a supervisor[2]. See Vance v.

---

[1] Should Your Honor grant Defendant's request to re-instate Defendant's Ninth and Tenth Affirmative Defenses, Plaintiff respectfully requests leave to supplement these propose instructions, as necessary.

[2] Plaintiff acknowledges that, under Vance v. Ball State, an employer may escape liability by demonstrating "as an affirmative defense, that (1) the employer exercised reasonable care to correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities that the employer provided." 570 U.S. 421, 133 S. Ct. at 2437. However, Defendant withdrew such affirmative defenses (See Dkt. No. 133) and therefore, Plaintiff respectfully contends that the jury should not be instructed as to Defendant's ability to escape liability based on the affirmative defenses outlined in Vance. Since Defendant has withdrawn those affirmative defenses, Plaintiff



ATTORNEYS AT LAW

Ball State Univ., 570 U.S. 421, 133 S. Ct. 2434, 2439 (2013). A supervisor is any employee who has the authority to take tangible employment actions against the complaining employee. Id. See Id. at 2443; Townsend v. Benjamin Enterprises, 679 F.3d 41, 51-53 (2d Cir. 2012); Dillon v. Ned Mgmt., Inc., 85 F. Supp. 3d 639, 656 (E.D.N.Y. 2015); Johnson v. West, 218 F.3d 725, 730 (7th Cir. 2000).

Accordingly, if you find that Ms. Duarte as proven by a preponderance of the evidence that she was subjected to a hostile work environment on the basis of her national origin and/or her disability by virtue of Mr. Quinones' and/or Ms. Arce Tomala's conduct and you find that Mr. Quinones and/or Ms. Arce-Tomala were supervisors, that is they had the authority to take tangible actions against Plaintiff, then I am instructing you to find the Hospital liable for the discrimination. See Townsend v. Benjamin Enterprises, 679 F.3d at 51-53.

**NYSHRL Instruction**: Under the State Human Rights Law, the Hospital may be found responsible for the discriminatory actions of Mr. Quinones and Ms. Arce-Tomala only if you find that the Hospital acquiesced in the discriminatory conduct or subsequently condoned the conduct. See Kirkland v. Speedway, LLC., 260 F.Supp.3d 211, 226 (N.D.N.Y. 2017). Subsequent condonation means a knowing, after-the-fact forgiveness or acceptance of the discriminatory conduct. Id. There is no requirement, however, that the Hospital take any active steps to condone the discriminatory behavior – you are permitted to consider any *in*action by the Hospital as evidence of the Defendant's condonation on the discriminatory behavior just as strongly as you would any affirmative actions of the Defendant. Id. Examples of inaction by the Hospital may include, but is not limited to, the unreasonable investigation of a complaint of discrimination or, the failure of the Defendant to strictly follow its own policies when a complaint of discrimination is received. Id.

Here, if you find that Ms. Duarte has proven by a preponderance of the evidence that she was subjected to a hostile work environment on the basis of her national origin and/or her disability by virtue of Mr. Quinones' and/or Ms. Arce Tomala's conduct and you find that the Hospital either acquiesced or condoned the conduct, I am instructing you to find the Defendant liable for the discriminatory conduct.

**NYCHRL Instruction:** Under the City Human Rights Law, the Hospital may be held liable for the discriminatory actions of Mr.

---

contends the only remaining issue related to imputing liability under Title VII is whether or not Mr. Quinones and/or Ms. Arce Tomala were supervisors and respectfully asks that the court limit this instruction accordingly.



NESENOFF &
MILTENBERG LLP

ATTORNEYS AT LAW

Quinones and Ms. Arce-Tomala under three circumstances: (i) if either Mr. Quinones and/or Ms. Arce-Tomala exercised managerial or supervisory responsibilities; (ii) the Hospital knew about the discriminatory conduct and failed to take immediate corrective action; or (iii) the Hospital should have known about the discriminatory conduct and failed to exercise reasonable diligence to prevent it. See N.Y.C. Admin. Code § 8-107(13)(b)(1)-(3); Swiderski v. Urban Outfitters, Inc., 2017 WL 6502221, at *7 (S.D.N.Y. Dec. 18, 2017); Zakrzewska v. The New Sch., 14 N.Y.3d 469, 479 (2010). The Hospital is deemed to have knowledge of the discrimination where the discriminatory conduct was known by any employee at the Hospital who had supervisory or managerial responsibility. Id.

Accordingly, if you find that Plaintiff has established by a preponderance of the evidence that (i) Plaintiff was subjected to a hostile work environment by Mr. Quinones or Ms. Arce-Tomala and either: (i) Mr. Quinones and/or Ms. Arce-Tomala was an employee who had managerial or supervisory responsibilities at the Hospital; or (ii) an employee with managerial or supervisory responsibilities knew of the hostile work environment and the Hospital failed to immediately take corrective action; or (iii) an employee with managerial or supervisory responsibilities should have known of the hostile work environment and the Hospital failed to exercise reasonable care to stop the discriminatory conduct, then you must hold the Hospital liable and find for the Plaintiff.

## II.  Plaintiff's Claims for Punitive Damages Under the New York City Human Rights Law

In light of the recent decision in Chuaca v. Abraham, 30 N.Y.3d 325 (2017), Plaintiff respectfully seeks to supplement her requested instruction on punitive damages with the following language:

Plaintiff similarly seeks punitive damages against the Hospital under the New York City Human Rights Law. Again, if you find for the Plaintiff, you may, but are not required, to award her punitive damages.

Unlike the standard under the federal and state human rights law, a plaintiff does not need to demonstrate that he or she was intentionally discriminated against or that such discriminatory actions were done with malice. Rather, the city human rights law imposes a lesser standard. Under the city human rights law, a plaintiff is entitled to punitive damages when "the wrongdoer has engaged in discrimination with willful or wanton negligence, or recklessness, or a "conscious disregard of the rights of others or conduct so reckless as to amount to such disregard." Chauca v. Abraham, 30, N.Y.3d 325, 2017 N.Y.



ATTORNEYS AT LAW

LEXIS 3278, at *10 (Nov. 20, 2017) (quoting and reaffirming Home
Ins. Co. v. American Home Prods., Corp., 75 N.Y.2d 196 (1990)).

Accordingly, if you find that Plaintiff has demonstrated by a
preponderance of the evidence that Defendant engaged in national
origin and/or disability discrimination with willful or wanton
negligence, or with a conscious disregard of her rights, you may award
her punitive damages under the City Human Rights Law.

Further, upon hearing the testimony and evidence deduced at trial, Plaintiff respectfully seeks
to include the following proposed jury instructions to help inform the jury of the weight and nature
of certain evidence received during the trial.

**I.    Bates Stamped Documents**

Throughout these proceedings, you have heard testimony regarding
production numbers, otherwise known as "bates stamp" numbers and
have seen references to such numbers on documents submitted into
evidence. I will now explain what those terms mean.

As you will see, many of the exhibits have a notation at the bottom of
each page that are either prefaced with "SBH" or "P." This notation is
called a bates stamp and it indicates that the document was exchanged
between the parties during discovery. If an exhibit's pages are bates
stamped with an "SBH", that means the exhibit was produced by the
Hospital. If an exhibit's pages are bates stamped with a "P", that means
the exhibit was produced by Plaintiff.

**II.   Testimony of a 30(b)(6) Witness**

The Defendant in this case is not an individual but rather an entity. In
cases where the defendant is a company, the plaintiff is permitted to
take the testimony of the defendant through its representatives.
Specifically, Federal Rule 30(b)(6) allows a plaintiff to take the
deposition of an entity defendant, through a representative of the
defendant's choosing, whose purpose is to answer questions under oath
on behalf of the entity defendant. When a 30(b)(6) witness testifies, he
or she does so as though it were the entity itself speaking and his
statements are binding on that entity. See Securities & Exchange
Comm'n v. Morelli, 143 F.R.D. 42, 45 (S.D.N.Y. 1992). It is the
witness' responsibility to be prepared to answer questions on behalf of
the company by among other things, reviewing relevant documents.
See In re Vitamins Antitrust Litigation, 216 F.R.D. 168, 172 (D.D.C.
2003) It is of no consequence whether or not the 30(b)(6) witness was
present at the time the events upon which he or she is questioned took



ATTORNEYS AT LAW

place – as someone speaking on behalf of the entity, the witness is deemed to know everything that the defendant knows.

You have heard evidence that Wayne Webb was designated and deposed as the Hospital's 30(b)(6) witness. Specifically, Mr. Webb testified as the Hospital's representative regarding (i) the relevant general human resources practices concerning complaints of discrimination [at the Hospital], and specific human resources action[, or inaction] regarding Plaintiff's complaints of … employment discrimination…" You are to view Mr. Webb's testimony regarding these specific topics as though it were the Hospital itself talking and all testimony that Mr. Webb gave during his deposition is binding on the Hospital. See Ieradi v. Lorillard, Inc., 1991 WL 158911, at *3 (E.D.Pa. Aug. 13, 1991).

Respectfully submitted,

NESENOFF & MILTENBERG LLP

By: /S/ Megan Goddard
    Megan S. Goddard, Esq.

cc: All Counsel (VIA ECF)