UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RUTH DUARTE,

                 Plaintiff,

       -against-

ST. BARNABAS HOSPITAL,

                 Defendant.

15 Civ. 6824 (PGG)

## **<u>JURY INSTRUCTIONS</u>**

January 26, 2018

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ 1

I.    GENERAL INSTRUCTIONS ................................................................................ 2

    A.    Introductory Remarks ............................................................................... 2

    B.    Role of the Court ...................................................................................... 2

    C.    Role of the Jury ........................................................................................ 3

    D.    Role of Counsel ....................................................................................... 3

    E.    Sympathy or Bias .................................................................................... 3

    F.    Burden of Proof ....................................................................................... 4

    G.    What Is and Is Not Evidence ................................................................... 5

    H.    Direct and Circumstantial Evidence ....................................................... 6

    I.    Witness Credibility ................................................................................. 7

    J.    Prior Inconsistent Statements ................................................................. 8

    K.    Bias of Witnesses ................................................................................... 8

    L.    Uncalled Witnesses Equally Available to Both Sides ............................ 9

    M.    Corporate Parties .................................................................................... 9

    N.    Bates Stamp ............................................................................................ 9

II.    INSTRUCTIONS CONCERNING City Human Rights Law Claim ............................ 10

    A.    Overview ............................................................................................... 10

    B.    New York City Human Rights Law Claim ........................................... 10

    C.    Damages ................................................................................................ 13

        1.    Compensatory Damages ............................................................ 13

        2.    Punitive Damages ..................................................................... 15

III.    FINAL INSTRUCTIONS ON PROCEDURE ........................................................ 18

    A.    Right to See Exhibits and Hear Testimony;  Communications With Court ......... 18

    B.    Duty to Deliberate/Unanimous Verdict ............................................... 19

    C.    Verdict Form ......................................................................................... 20

    D.    Duties of Foreperson ............................................................................ 20

    E.    Return of Verdict .................................................................................. 20

IV.    CONCLUSION ................................................................................................ 20

I.      **GENERAL INSTRUCTIONS**

A.      **Introductory Remarks**

Members of the jury, I will now instruct you as to the law that governs this case. You have been handed a copy of the instructions I will read.  You should feel free to read along or to just listen to me.  You will be able to take your copy of these instructions into the jury room.

You have heard all of the evidence in the case as well as the final arguments of the lawyers.  You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict.

There are three parts to these instructions.  First, there are general instructions about your role, and about how you are to go about deciding the factual issues in this case. Second, there are instructions concerning the law applicable to the New York City Human Rights Law claim in this case.  Third, there are final instructions about such matters as communications with the Court, about deliberations, and about returning a verdict.

It is important that you listen carefully.  I'm reading these instructions from a prepared text because the law is made up of words that are very carefully chosen.  This is not a time to ad lib.  So when I tell you what the law is, it is critical that I use exactly the right words.

B.      **Role of the Court**

My duty is to instruct you on the law.  It is your duty to accept these instructions of law and to apply them to the facts as you determine them.  With respect to legal matters, you must take the law as I give it to you.  If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You are to consider these instructions together as a whole; in other words, you are not to isolate or give undue weight to any particular instruction.  You must not substitute your

own notions or opinions of what the law is or what you think it ought to be.

      **C.**    **Role of the Jury**

As members of the jury, you are the sole and exclusive judges of the facts. You decide what happened. You must determine the facts based solely on the evidence received in this trial. Any opinion I might have regarding the facts is of absolutely no consequence.

      **D.**    **Role of Counsel**

The personalities and the conduct of counsel in the courtroom are not in any way at issue. If you formed an opinion of any kind as to any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, that should not enter into your deliberations at all.

From time to time, the lawyers and I had conferences at the bench and other conferences out of your hearing. These conferences involved procedural and evidentiary matters, and should not enter into your deliberations at all.

Lawyers have a duty to object when the other side offers testimony or other evidence that the lawyer believes is not admissible. It is my job to rule on those objections. Why an objection was made is not your concern. You should not draw any inference simply from the fact that a lawyer objects to a question. If I sustained the objection, you may not consider the testimony or exhibit at issue; if I overruled the objection, you should consider the testimony or exhibit just as you would any other evidence in the case.

      **E.**    **Sympathy or Bias**

You must evaluate the evidence calmly and objectively, without prejudice or sympathy. You must be completely fair and impartial. Your verdict must be based solely on the evidence presented at this trial, or the lack of evidence. Our system of justice cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

You may not consider, in deciding the facts of the case, any personal feelings you may have about the race, national origin, sex or age of any party or witness.  You must regard the parties as of equal standing in the community, and of equal worth.  All parties are entitled to the same fair trial at your hands.  They stand equal before the law, and are to be dealt with as equals in this court.

F.   **Burden of Proof**

Because this is a civil case, the standard of proof is a preponderance of the evidence.  In my instructions, I will tell you whether Ms. Duarte or St Barnabas Hospital – which I will refer to as the "Hospital" – has the burden of proof as to a particular issue.

To establish by a preponderance of the evidence means that the evidence of the party having the burden of proof must be more convincing and persuasive to you than the evidence opposed to it.  A preponderance of the evidence means the greater weight of the evidence.  The difference in persuasiveness need not be great:  it requires only that you find that the scales tip, however slightly, in favor of the party having the burden of proof – that what that party claims is more likely than not true.  If you find that the credible evidence as to a particular issue is evenly divided, then you must find in favor of the party not having the burden of proof.

What is important here is the quality and persuasiveness of the evidence relied on by a party, and not the number of witnesses, the number or variety of the exhibits that party introduced, or the length of time that party spent on a particular subject.  In determining whether any fact has been proven by a preponderance of the evidence, you may consider the testimony of the witnesses, the exhibits received in evidence, and any stipulated facts, regardless of which side introduced this evidence.  Simply because I have permitted certain evidence to be introduced does not mean that I have decided that it is important or significant.  That is for you to decide.

4

G.      **What Is and Is Not Evidence**

In determining the facts, you must rely upon your recollection of the evidence. The evidence in this case includes the testimony of the witnesses and the exhibits received in evidence.

As I instructed you at the outset of the trial, you are not to consider questions asked by the lawyers as evidence.  It is the witnesses' answers that are evidence, not the questions.  The questions are significant only insofar as they put the answers in context.

From time to time, I asked witnesses questions.  You should draw no inference from that.  My questions were only intended for clarification or to expedite matters and were not intended to suggest any opinion on my part as to whether any witness was more or less credible than any other witness, or any view as to what your verdict should be.

If I struck or excluded any testimony, you may not consider that testimony in rendering your verdict.

To constitute evidence, exhibits must first be received in evidence.  Exhibits marked for identification but not admitted are not evidence, nor are materials that were used only to refresh a witness's recollection.

Arguments by the lawyers are not evidence, because the lawyers are not witnesses.  What they have said to you in their opening statements and in their closing arguments may help you understand the evidence and assist you in reaching a verdict, but these arguments are not evidence.  Moreover, if your recollection of the evidence differs from the statements made by the lawyers in their arguments to you, it is your recollection that controls.

Finally, any statements that I may have made during the trial do not constitute evidence.  Similarly, any statements or rulings I have made during the trial, are not any indication of my views as to what your decision should be.  The decision here is for you alone.

It is for you alone to decide what weight, if any, should be given to the testimony and the exhibits received in evidence in this case.

### H. Direct and Circumstantial Evidence

Generally, there are two types of evidence that you may consider in reaching your verdict.

Direct evidence is testimony by a witness about something he or she knows by virtue of his or her own senses – something seen, felt, touched, or heard. For example, if a witness were to testify that when he or she left home this morning, it was raining, that would be direct evidence about the weather. Direct evidence may also be in the form of an exhibit.

Circumstantial evidence is evidence from which you may infer the existence of certain facts. For example, assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds are drawn and you can't look outside. As you are sitting here, someone walks in with an umbrella, which is dripping wet. A few minutes later another person enters with a wet raincoat. Now, you can't look outside the courtroom and see whether it is raining. So you have no direct evidence of that fact. But based on the facts that I have asked you to assume, you could conclude that it had been raining.

That is all there is to circumstantial evidence. On the basis of reason, experience, and common sense, you infer from one established fact the existence or non-existence of some other fact.

The matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation. A proper inference is a logical, factual conclusion that you might reasonably draw from other facts that have been proven. It is often the case that material facts – such as what a person was thinking or intending – are not easily proven by direct evidence. Proof of such matters is often established by circumstantial evidence.

Circumstantial evidence is of no less value than direct evidence.

## I.   __Witness Credibility__

You should evaluate the credibility or believability of the witnesses by using your common sense.  Common sense is your greatest asset as a juror.  Ask yourself whether the witness appeared honest, open and candid.  Did the witness appear evasive or as though he or she was trying to hide something?  How responsive was the witness when questioned by opposing counsel as compared to that witness's responsiveness when questioned by his or her own lawyer?

If you find that any witness lied under oath, you should view the testimony of that witness cautiously and weigh it with great care.  It is for you to decide, however, how much of that witness's testimony, if any, you wish to believe.  Few people recall every detail of every event precisely the same way.  A witness may be inaccurate, contradictory, or even untruthful in some respects, and yet entirely believable and truthful in other respects.  It is for you to determine whether such inconsistencies are significant or inconsequential, and whether to accept or reject all, or to accept some and reject the balance of, that witness's testimony.

In sum, it is up to you to decide whether a witness's testimony is truthful and accurate, in part, in whole, or not at all, as well as what weight, if any, to give to that witness's testimony.

In evaluating the testimony of any witness, you may consider, among other things:

- the witness's intelligence;

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;
- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the manner of the witness while testifying; and

- the reasonableness of the witness's testimony in light of all the evidence in the case, including testimony from other witnesses and the exhibits that have been received in evidence.

**J.**     **Prior Inconsistent Statements**

You have heard evidence that, at some earlier time, witnesses have said or done something that counsel argues is inconsistent with their trial testimony.

Evidence of prior allegedly inconsistent statements was introduced to help you decide whether to believe the trial testimony of a witness.  If you find that a witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with an insignificant detail; whether the witness had an explanation for the inconsistency, and whether that explanation accords with your common sense.

It is exclusively your decision, based upon all the evidence and your own good judgment, whether the prior statement was inconsistent, and if so how much weight, if any, to give the inconsistent statement in determining whether to believe all, part of, or none of that witness's testimony.

**K.**     **Bias of Witnesses**

In deciding whether to believe a witness, you should consider any evidence that the witness is biased in favor of, or against, one side or the other.  Likewise, you should consider evidence of any interest or motive that the witness may have in cooperating with one side or the other.  You should also take into account any evidence that a witness may benefit in some way from the outcome of the case.

It is your duty to consider whether any witness has permitted bias or interest to color his or her testimony.  If so, you should view that witness's testimony with caution, weigh it with great care, and subject it to close and searching scrutiny.

Of course, the mere fact that a witness has an interest in the outcome of this case does not mean that the witness has not told the truth.  It is for you to decide from your observations and applying your common sense and life experience whether the possible interest of any witness has intentionally or otherwise colored or distorted that witness's testimony.  You are not required to disbelieve a witness with an interest in the outcome of this case; you may accept as much of that witness's testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

### L.    <u>Uncalled Witnesses Equally Available to Both Sides</u>

During this trial, you heard the names of certain individuals who did not testify. Each side had an equal opportunity or lack of opportunity to call witnesses.  Therefore, you should not draw any inference or reach any conclusions as to what uncalled witnesses would have testified to had they been called.

### M.    <u>Corporate Parties</u>

A non-profit corporation like St. Barnabas Hospital is entitled to the same fair trial as any private individual.  Corporations stand equal before the law with individual parties, and are to be dealt with as equals in a court of law.

### N.    <u>Bates Stamp</u>

There have been references at trial to a Bates stamp number, which is simply an identifying number found at the bottom of each page of documents that were exchanged by the parties during pretrial proceedings.  Documents containing the "SBH" stamp were produced by

the Hospital to Ms. Duarte; documents stamped with a "P" were produced by the Plaintiff, Ms.

Duarte, to the Hospital.

*        *        *        *

I will now turn to the law applicable to Ms. Duarte's New York City Human

Rights Law claim.

## II.        INSTRUCTIONS CONCERNING CITY HUMAN RIGHTS LAW CLAIM

### A.        Overview

The plaintiff, Ruth Duarte, claims that she was subjected to discrimination based

on her hearing disability while working at St. Barnabas Hospital, in violation of the New York

City Human Rights Law.  The Hospital denies Ms. Duarte's allegations.

### B.        New York City Human Rights Law Claim

The New York City Human Rights Law provides that

> It shall be an unlawful discriminatory practice . . .[f]or an employer or an
> employee or agent thereof, because of the . . . disability . . . of any person . . . to
> discriminate against such person in compensation or in terms, conditions or
> privileges of employment.

The City Human Rights Law prohibits discrimination on the basis of a disability.

In order to prevail on her claim under the City Human Rights Law, Ms. Duarte must prove each

of the following elements by a preponderance of the evidence:

First, that she was treated less well than other employees because of her hearing

disability;[1] and

Second, that the Hospital is responsible for that discriminatory conduct.[2]

With respect to the first element, Plaintiff must demonstrate that she suffered

unequal treatment at work because of her hearing disability.  The severity and frequency of the

---

[1]  Williams v. N.Y.C. Hous. Auth., 872 N.Y.S.2d 27, 39 (1st Dep't 2009).
[2]  Zakrzewska v. New Sch., 14 N.Y.3d 469, 479 (2010).

unequal treatment are irrelevant as to liability, but may be considered as to damages.[3]  I want to emphasize, however, that the City Human Rights Law is not a general civility code.  The plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive.[4]

         If you determine that Ms. Duarte was treated less well at work because of her hearing disability, you must then determine whether the Hospital, as the employer, may be held liable for the discrimination she suffered.  Under the City Human Rights Law, an employer may be held liable for the discriminatory actions of its employees where:  (1) the offending employee exercised managerial or supervisory responsibility; (2) the employer knew of the offending employee's discriminatory conduct and acquiesced in it or failed to take immediate and appropriate corrective action; or (3) the employer should have known of the offending employee's unlawful discriminatory conduct but failed to exercise reasonable diligence to prevent it.[5]  As to the Hospital's knowledge, you should be aware that the Hospital is deemed to have knowledge of the discrimination where the discriminatory conduct was known by a Hospital employee with supervisory or managerial responsibilities.  Moreover, if you find that a supervisor committed the discriminatory acts, the Hospital is responsible for that conduct under

---

[3]  Swiderski v. Urban Outfitters, Inc., 14 CV 6307(JPO), 2017 WL 6502221 (S.D.N.Y. Dec. 18, 2017); Brown v. City of New York, 2013 WL 3789091, at *18 (S.D.N.Y. July 19, 2013); Zambrano-Lamhaouhi v. New York City Bd. of Educ., 866 F. Supp. 2d 147, 165 (E.D.N.Y. 2011); Williams, 872 N.Y.S.2d at 38.
[4]  Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013).
[5]  Zakrzewska, 14 N.Y.3d at 479 ("[T]he NYCHRL imposes liability on the employer in three instances: (1) where the offending employee exercised managerial or supervisory responsibility . . . ; (2) where the employer knew of the offending employee's unlawful discriminatory conduct and acquiesced in it or failed to take immediate and appropriate corrective action; and (3) where the employer should have known of the offending employee's unlawful discriminatory conduct yet failed to exercise reasonable diligence to prevent [it].") (internal quotation marks and citation omitted).

the City Human Rights Law, without regard to whether the Hospital knew or should have known about the discriminatory acts.[6]

       If you find that Ms. Duarte has met her burden with respect to both of these elements, then you must consider whether the Hospital has shown – by a preponderance of the evidence – that the conduct at issue consisted of nothing more than what a reasonable person would regard as petty slights or inconveniences.  If the Hospital has shown that the treatment experienced by Ms. Duarte on account of her hearing disability consisted of no more than minor slights and inconveniences, then you will find in favor of the Hospital on Ms. Duarte's City Human Rights Law claim.[7]  On this affirmative defense, the Hospital has the burden of proof.

       Additionally, if you find that Ms. Duarte has met her burden with respect to both elements of her City Human Rights Law claim, then you must consider whether the Hospital has shown – by a preponderance of the evidence – that it would have treated Ms. Duarte the same way regardless of her hearing disability.[8]  If the Hospital has shown that it would have treated Ms. Duarte the same way regardless of her disability, then you will find in favor of the Hospital on Ms. Duarte's City Human Rights Law claim.  Again, on this affirmative defense, the Hospital has the burden of proof.

       To conclude, if you find that Ms. Duarte has established both elements of her City Human Rights Claim by a preponderance of the evidence, and that Defendant has not proven either of its affirmative defenses, then you will return a verdict in Ms. Duarte's favor.  If you find that Ms. Duarte has not established both elements of her City Human Rights Law claim, or that

---

[6] See id. at 479-80; see also Caravantes v. 53rd St. Partners, LLC, No. 09 CIV. 7821 RPP, 2012 WL 3631276, at *17 (S.D.N.Y. Aug. 23, 2012).
[7] Williams, 872 N.Y.S.2d at 40-41; Panzarino v. Deloitte & Touche LLP, 2009 WL 3539685, at *9 (S.D.N.Y. Oct. 29, 2009).
[8] Weiss v. JP Morgan Chase & Co., 2010 WL 114248, *4 (S.D.N.Y. Jan. 13, 2010).

the Hospital has proven one or more of its affirmative defenses, then you will return a verdict in favor of the Hospital.

### C.      Damages[9]

If you return a verdict in Ms. Duarte's favor on her City Human Rights Law claim, then you will go on to determine the damages to which she is entitled.  The mere fact that I am instructing you on damages does not mean that I have an opinion on whether the Hospital should be held liable in this case.  It is your responsibility to decide whether there is liability, and I am instructing you on damages only so that you will have guidance in the event that you decide that Ms. Duarte has proven her claim.

If you find that Ms. Duarte has proved liability according to the standards I have explained, there are two types of damages you may consider:  compensatory damages and punitive damages.

### 1.      Compensatory Damages[10]

The first category of damages is compensatory damages.  The purpose of a compensatory damage award is to compensate a plaintiff for the actual injuries she suffered or will suffer as a direct result of a defendant's unlawful conduct.  If you find in favor of Ms. Duarte on her City Human Rights Law claim, then you must award her the sum that you find – by a preponderance of the evidence – will fairly and justly compensate her for any damages you find she has sustained, and is reasonably certain to sustain in the future, as a direct result or as a reasonably foreseeable consequence of the Hospital's unlawful conduct.

The damages that you award must be fair and reasonable in light of the evidence, neither inadequate nor excessive.  You should not award compensatory damages for speculative

---

[9]  Based on instructions in <u>Bouveng v. NYG Capital LLC</u>, 14 Civ. 5474 (PGG).
[10]  Based on instructions in <u>Bouveng</u>.

injuries, but only for those injuries that Ms. Duarte has actually suffered or is reasonably expected to suffer.  It is Ms. Duarte's burden to prove the amount of her damages and to prove that the damages were caused by the Hospital's actions.  There is no exact standard to be applied, but your determination of damages cannot be based on sympathy, speculation, or guesswork. You must determine, based on your common sense and experience, what award is fair and just in light of the evidence.  You must keep in mind that the purpose of a compensatory damage award is to compensate a plaintiff for injuries she has suffered, and not to punish the defendant.

Here, Ms. Duarte seeks compensatory damages solely for her alleged emotional distress.  Ms. Duarte is entitled to damages for any emotional distress, pain, or suffering that she has experienced, or which she can reasonably be expected to experience in the future, as a result of the Hospital's unlawful conduct, if you find that any such unlawful conduct occurred.  You may not award Ms. Duarte damages for emotional distress, pain, or suffering caused by factors other than the unlawful conduct of the Hospital.

In order to recover damages for emotional distress, Ms. Duarte must present credible evidence with respect to the nature, character, duration, and severity of the claimed emotional distress.  Psychiatric or other medical treatment is not a pre-condition to recovery, however, and there is no requirement that evidence of the monetary value of such intangibles as pain and suffering be introduced into evidence.  Nor is Ms. Duarte required to prove her claim through expert medical testimony.  You may, however, consider whether psychiatric or medical treatment was sought in determining whether a damage award for emotional distress is appropriate.

If you find in favor of Ms. Duarte on her City Human Rights Law claim, but you find she has not proven any damages, then you will return a verdict for Ms. Duarte in the nominal amount of $1.00.[11]

### 2.   Punitive Damages

Ms. Duarte also seeks an award of punitive damages.  Punitive damages are awarded to punish a defendant for certain types of wrongful conduct, which I will define in a moment, and to deter others from engaging in such conduct.[12]  Punitive damages are intended to protect the community, and to be an expression of the jury's indignation at a defendant's misconduct.[13]

As with compensatory damages, the fact that I am instructing you on punitive damages is not any indication of my view as to what your verdict should be, or on whether punitive damages should be awarded.[14]  It is entirely up to you to decide whether – under my instructions – punitive damages should be awarded in this case.[15]  I must also caution you that – even if you find that Ms. Duarte's rights were violated – she is not entitled to punitive damages as a matter of right.[16]

Punitive damages may be awarded based on a violation of the City Human Rights Law where a plaintiff proves – by a preponderance of the evidence – that the defendant has engaged in discrimination with willful or wanton negligence, with recklessness, or with a conscious disregard of the plaintiff's rights or conduct so reckless that it amounts to such

---

[11]  Adapted from jury instructions in <u>MacMillan v. Millennium Broadway Hotel</u>, No. 09 Civ. 6053 (PGG).
[12]  Based on instructions in <u>Bouveng</u>.
[13]  <u>Id.</u>
[14]  <u>Id.</u>
[15]  <u>Id.</u>
[16]  Based on instruction in <u>MacMillan</u>.

disregard.[17]   Under this standard, a defendant need not know that he or she was violating the law,

and the plaintiff is not required to prove intentional or malicious conduct.[18]

Where an employee engages in discrimination with willful or wanton negligence,

recklessness, or a conscious disregard of the plaintiff's rights under the City Human Rights Law,

the employer may be held liable for punitive damages where:  (1) the offending employee

exercised managerial or supervisory responsibility; (2) the employer knew of the offending

employee's discriminatory conduct and acquiesced in it or failed to take immediate and

appropriate corrective action; or (3) the employer should have known of the offending

employee's unlawful discriminatory conduct yet failed to exercise reasonable diligence to

prevent it.[19]

---

[17]   Chauca v. Abraham, 30 N.Y.3d 325, 2017 N.Y. LEXIS 3278, at *10 (Nov. 20, 2017) ("We hold, therefore, that the standard for determining punitive damages under the NYCHRL is whether the wrongdoer has engaged in discrimination with wilful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.") (internal quotation marks and citation omitted).

[18]   Id. at 10 n.3 ("[T]he reference to 'rights' here does not impose a requirement that the wrongdoer know (s)he is violating the law.").

[19]   [The City Human Rights Law] establishes the availability of both compensatory and punitive damages awards against employers and employees found directly liable for discriminatory practices. [N.Y.C. Admin. Code] § 8–502(a).  In addition to setting forth liability for an employer's own discriminatory practices, the law also "creates an interrelated set of provisions to govern an employer's liability for an employee's unlawful discriminatory conduct in the workplace." Zakrzewska v. New Sch., 14 N.Y.3d 469, 902 N.Y.S.2d 838, 928 N.E.2d 1035, 1039 (2010) (emphasis added).

As to this imputed liability, employers can be held vicariously liable for the acts of their employees in the following circumstances: "(1) where the offending employee 'exercised managerial or supervisory responsibility' ...; (2) where the employer knew of the offending employee's unlawful discriminatory conduct and acquiesced in it or failed to take 'immediate and appropriate corrective action'; and (3) where the employer 'should have known' of the offending employee's unlawful discriminatory conduct yet 'failed to exercise reasonable diligence to prevent [it].' " Id. (quoting N.Y.C. Admin. Code § 8–107(13)(b)(1)–(3)). Implicitly recognizing that an employer cannot control all actions of its employees, the law also enables an employer liable for the conduct of an employee to mitigate punitive damages liability or avoid liability altogether in

However, an employer is not liable for punitive damages based on an employee's wrongful conduct where the employer proves by a preponderance of the evidence that it has (1) put into place policies and procedures to educate employees about unlawful discrimination, to prevent and detect unlawful discrimination, and to investigate and effectively resolve complaints of such conduct; and (2) has made good faith efforts to implement and enforce these policies and procedures.[20]

In determining the amount of punitive damages to award Ms. Duarte, you must keep in mind that punitive damages are not intended to, and may not be used to, compensate Ms. Duarte for her injuries.  Instead, the purpose of punitive damages is to punish a defendant and to deter similar conduct in the future.[21]  Accordingly, if you award punitive damages, you should consider the defendant's net worth and the impact of paying that award.[22]  A punitive damages award should be limited to the amount reasonably necessary to achieve the goals of punishment and deterrence, and should not be so high as to result in the financial ruin of the Defendant. Moreover, any award of punitive damages must bear a reasonable and proportional relationship to Ms. Duarte's actual injury and the compensatory damages you awarded her.[23]

---

certain circumstances where the employer can prove it has put into place policies and procedures to educate employees, to prevent and detect unlawful discrimination, and to investigate and effectively resolve complaints of such conduct. See N.Y.C. Admin. Code § 8–107(13)(d)–(e).

Chauca v. Abraham, 841 F.3d 86, 90 (2d Cir.), as amended (Nov. 8, 2016), certified question accepted, 28 N.Y.3d 1108, 68 N.E.3d 76 (2016), and certified question answered, 30 N.Y.3d 325 (2017).

[20] Id. at 90; see also See N.Y.C. Admin. Code § 8–107(13)(d)–(e).
[21] Based on instructions in MacMillan.
[22] TVT Records v. Island Def Jam Music Grp., 257 F. Supp. 2d 737, 745 (S.D.N.Y. 2003) ("It is well-settled . . . that evidence of a defendant's net worth is properly considered given the goals of punishment and deterrence served by punitive damages.") (citations omitted).
[23] Kauffman v. Maxim Healthcare Servs., Inc., 509 F. Supp. 2d 210, 217 (E.D.N.Y. 2007) ("Punitive damages must bear a 'reasonable relationship' to the compensatory damages awarded.") (citing BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 580 (1996)); see also State Farm

In calculating a punitive damages award, you should consider, among other things, the

(1)  nature and reprehensibility of the Defendant's conduct, including the character of the wrongdoing and the Defendant's awareness of what harm the conduct caused or was likely to cause;[24]

(2) the amount of time the Defendant engaged in reprehensible conduct;[25] and

(3) the Defendant's financial condition and the impact your punitive damages award will have on the Defendant.[26]

## III.   FINAL INSTRUCTIONS ON PROCEDURE

### A.   Right to See Exhibits and Hear Testimony; Communications With Court

Ladies and gentlemen of the jury, that concludes my instructions to you concerning the specific claim in this case.  You will soon retire to the jury room and begin your deliberations.  All of the documentary exhibits that were admitted into evidence during the trial will be sent into the jury room.  If you want any of the testimony, you may request that.  Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can be in requesting exhibits or portions of testimony.

---

Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 426 (2003) ("In sum, courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered.").

[24]  Based on instructions in MacMillan; see also instructions in Gomez v. City of New York, No. 99 Civ. 9568, 05 Civ. 4811(LAK); New York PJI §§ 2:278; 3:30; Payne v. Jones, 711 F.3d 85, 101 (2d Cir. 2012) ("The Gore decision described the degree of reprehensibility of the defendant's misconduct as '[p]erhaps the most important indicium of the reasonableness of a punitive damages award.'") (quoting Gore, 517 U.S. at 575).

[25]  Based on instructions in MacMillan; see also instructions in Gomez; New York PJI § 2:278.

[26]  Based on instructions in MacMillan; see also instructions in Gomez; see also PJI §§ 2:278; 3:30; Caravantes, 2012 WL 3631276, at *25 ("An award should be limited to the amount reasonably necessary to achieve th[e] end [of punishing a defendant and deterring him and others from similar conduct in the future], and should not be so high as to result in the financial ruin of the defendant.") (internal quotation marks and citation omitted).

If you want any further explanation of the law as I have explained it to you, you may also request that.  As I noted earlier, however, you will each be permitted to take your copy of the instructions into the jury room.

Any communication to me should be made in writing, signed by your foreperson, include the date and time, and be given to one of the Marshals.  Please make any notes as clear and precise as possible.  Do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

### B.    Duty to Deliberate/Unanimous Verdict

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement.  Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous.  Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either side, and adopt that conclusion which in your good conscience appears to be most in accordance with the truth.

Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors.  Each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors.  No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

If you are divided, do <u>not</u> report how the vote stands, and if you have reached a verdict do not report what it is until you are asked in open court.

19

### C.      **Verdict Form**

Your verdict will be organized according to a verdict form.  This form will assist you in reaching a verdict and lists the questions you must answer based on the instructions that I have given.

### D.      **Duties of Foreperson**

Finally, I referred a moment ago to a foreperson.  It is customary for Juror Number 1 to serve as the foreperson, and that is what we will do here.  The foreperson doesn't have any more power or authority than any other juror, and his vote or opinion doesn't count for any more than any other juror's vote or opinion.  The foreperson is merely your spokesperson to the court.  He will send out any notes, and when the jury has reached a verdict, he will notify the Marshal that the jury has reached a verdict, and you will come into open court and deliver your verdict.

### E.      **Return of Verdict**

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it and advise the marshal outside your door that you are ready to return to the courtroom.

Each of you must be in agreement with the verdict that is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

## IV.   **CONCLUSION**

Members of the jury, that concludes my instructions to you.  I will ask you to remain seated for a moment while I confer with the attorneys to see if there are any additional instructions that they would like me to give.

*        *        *        *

20

The Marshal will now be sworn.  Members of the jury, you may now begin your deliberations.