UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RUTH DUARTE,                                              :      **ECF**

                                                          :

                           Plaintiff,                     :

            – against –                                   :      Case No.:

                                                          :      15-CV-6824(PGG)

ST. BARNABAS HOSPITAL,                                    :

                           Defendant.                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW OF DEFENDANT ST. BARNABAS HOSPITAL IN
SUPPORT OF ITS MOTION FOR A NEW TRIAL PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 59**

EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, New York 10177-1211
(212) 351-4500
*Attorneys for Defendant*
*St. Barnabas Hospital*

Firm:45916373

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ..............................................................................................................................2

  I.  NEITHER THE EVIDENCE NOR THE CASES CITED BY DUARTE
     SUPPORT THE JURY'S EMOTIONAL DISTRESS DAMAGES
     AWARD. ...................................................................................................... 2

  II.  THE JURY'S PUNITIVE DAMAGES AWARD IS A MISCARRIAGE OF
     JUSTICE AND SHOULD BE VACATED IN ITS ENTIRETY OR, IN
     THE ALTERNATIVE, SUBSTANTIALLY REDUCED. ................................... 5

      A.    Duarte Cannot Have The Punitive Damages Jury Instruction
           Rewritten To Preserve The Jury's Award. ............................................. 5

      B.    Duarte Has Conflated The Hospital's Response To Her 2011
           Performance Appraisal "Rebuttal" With The Events Surrounding
           Her 2013 Disciplinary Notice "Rebuttal." ............................................. 6

      C.    The Punitive Damages Awarded By The Jury Are Excessive................................ 8

CONCLUSION ...........................................................................................................10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BMW of N. Am., Inc. v. Gore*,
  517 U.S. 559 (1996)...................................................................................................8, 9

*Bouveng v. NYG Capital LLC*,
  175 F. Supp. 3d 280 (S.D.N.Y. Mar. 31, 2016)...................................................2, 8

*Brady v. Wal-Mart Stores, Inc.*,
  455 F. Supp. 2d 157 (E.D.N.Y. 2006), *aff'd*, 531 F.3d 127 (2d Cir. 2008)..............3

*Greenbaum v. Svenska Handlesbanken, NY*,
  67 F. Supp. 2d 229 (S.D.N.Y. 1999).....................................................................10

*Hughes v. Patrolmen's Benevolent Ass'n of New York, Inc.*,
  850 F.2d 876 (2d Cir. 1988)....................................................................................4

*Katt v. City of New York*,
  151 F. Supp. 2d 313 (S.D.N.Y. 2001),
  *aff'd sub nom.*, *Krohn v. N.Y.C. Police Dep't*, 372 F.3d 83 (2d Cir. 2004)..........................3, 4

*Manley v. AmBase Corp.*,
  337 F.3d 237 (2d Cir. 2003)....................................................................................8

*McIntyre v. Manhattan Ford, Lincoln Mercury*,
  256 A.D.2d 269 (1st Dep't 1998) ......................................................................9, 10

*McIntyre v. Manhattan Ford, Lincoln Mercury*,
  175 Misc. 2d 795 (Sup. Ct. N.Y. Cty. 1997), *aff'd in part, modified in part by*
  256 A.D.2d 269 (1st Dep't 1998) ......................................................................9, 10

*N.Y.C. Transit Auth. v. State Div. of Human Rights*,
  78 N.Y.2d 207 (2d Dep't 1990), *rev'g* 163 A.D.2d 315 (2d Dep't 1990) ............................4, 5

*Olsen v. Cty. of Nassau*,
  615 F. Supp. 2d 35 (E.D.N.Y. 2009) .......................................................................4

*Osorio v. Source Enter., Inc.*,
  No. 05-cv-10029 (JSR), 2007 U.S. Dist. LEXIS 18725 (S.D.N.Y. Mar. 5,
  2007) ........................................................................................................................5

*Phillips v. Bowen*,
  278 F.3d 103 (2d Cir. 2002)....................................................................................4

ii

*Salemi v. Gloria's Tribeca, Inc.*,
    115 A.D.3d 569 (1st Dep't 2014) ..............................................................9

*Sogg v. American Airlines*,
    193 A.D.2d 153 (1st Dep't 1993) ..............................................................4

*Thorsen v. County of Nassau*,
    722 F. Supp. 2d 277 (E.D.N.Y. 2010) ..................................................2, 3

*Town of Hempstead v. State Div. of Human Rights*,
    233 A.D.2d 451 (2d Dep't 1996) ..............................................................4

*Zakrzewska v. New School*,
    14 N.Y.23d 469 (2010) ........................................................................5, 6

**Regulations**

N.Y.C. Admin. Code § 8-107(13)(e) ..............................................................6

Firm:45916373

## PRELIMINARY STATEMENT

In an attempt to overcome the dearth of evidence supporting the jury's excessive damages award, plaintiff Ruth Duarte devotes much of her opposition brief to the facts supporting the jury's *liability* finding on her discrimination claim.   The pending motion, however, is addressed to the *damages* awarded by the jury – and Duarte's reliance on the facts related to liability cannot overcome the lack of evidence supporting the jury's compensatory and punitive damages awards.   Nor can her tortured analysis of the law and mischaracterization of the record save those awards.

Duarte's summary of her emotional distress testimony is far less fulsome than the Hospital's quoting of her actual testimony; she does little more than repeat that she felt generalized and non-specific "anxiety."   Thus, as this Court has recognized in similar circumstances, this case does not fall in the category of "significant" emotional distress damages cases, and the jury's award should be reduced to reflect that Duarte's evidence places her damages squarely in the "garden variety" category.

As for the punitive damages award, Duarte would have the Court rewrite the jury instructions to eliminate language that would allow an employer to avoid punitive damages where it had in place policies to prevent discrimination and made good faith efforts to enforce those policies.   Duarte's position is incorrect as a matter of law.   Further, her improper reliance on evidence related to her dismissed national origin discrimination claim supports the conclusion that the punitive damages award constituted a miscarriage of justice.   If, however, the Court decides to remit the punitive damages, rather that vacate the award altogether, then it should reduce them substantially; the cases upon which Duarte relies had evidence of far greater reprehensible conduct than present here.   Finally, Duarte does not dispute that should the Court

remit the compensatory damages award, it should likewise reduce the punitive damages award to maintain the same ratio as currently exists in the jury's verdict.

## ARGUMENT

### I.  NEITHER THE EVIDENCE NOR THE CASES CITED BY DUARTE SUPPORT THE JURY'S EMOTIONAL DISTRESS DAMAGES AWARD.

Contrary to Duarte's argument, this is not a case that falls in the "significant" category of emotional distress damages.  As this Court observed in *Bouveng v. NYG Capital LLC*, 175 F. Supp. 3d 280 (S.D.N.Y. 2016), in cases of "significant" emotional distress, "there is typically evidence of debilitating and permanent alterations in lifestyle."  175 F. Supp. 3d at 328 (citation omitted).  There is no such evidence here.  In the absence of *actual* medical evidence or debilitating and permanent alterations in lifestyle, Duarte needed to introduce something more – some "extraordinary circumstances" – to justify an award that went well beyond the "garden variety" range.  *Id.*  Duarte's notion that telling her colleagues about the "abusive work environment" was "tantamount to treating with a mental health professional" (Pl. Br. 17) is unsupported by the record and any case law.[1]

The cases cited by Duarte contain substantially more evidence of emotional distress than she presented at trial.  In *Thorsen v. Cty. of Nassau*, 722 F. Supp. 2d 277 (E.D.N.Y. 2010), the plaintiff *and his psychologist* "testified at length about [the plaintiff's] depression and anxiety arising from the reduction in his job duties."  722 F. Supp. 2d at 292.  Both the plaintiff and his psychologist testified in detail that the plaintiff exhibited physical symptoms including "visible anxiety, tearfulness, nausea, headaches, and difficulty sleeping."  *Id.* at 293.  In one instance, the plaintiff suffered *a "major stress attack" requiring hospitalization*. *Id.*  Additionally, the

---

[1] When asked what she said to her co-workers, Duarte merely responded "[w]hat I was experiencing and what I was feeling at that time" (Tr. 776:19 to 777:12) – *without explaining what she was actually feeling at the time*.  This is just one more example of Duarte's conclusory and vague testimony.

Firm:45916373

plaintiff saw his psychologist for approximately six months, "he continued to receive therapy for around a year-and-half until his retirement", and was prescribed *antidepressant and antianxiety medications*. *Id.* at 292. On that evidentiary record, the court remitted the jury's award for emotional distress damages to $500,000. *Id.* at 295.

*Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157 (E.D.N.Y. 2006), *aff'd*, 531 F.3d 127 (2d Cir. 2008), also does not support Duarte's position. The plaintiff, who suffered from cerebral palsy and prevailed on his disability discrimination claims, corroborated his testimony about pain and suffering with testimony by family members who witnessed it *and the psychiatrist who treated him.* The plaintiff's parents testified that his experiences adversely affected his relationship with the rest of his family and caused him to lose interest in school, become unable to sleep, lose his appetite, and cry at random. *Id.* at 197-98. At one point, the plaintiff suffered *"'a total breakdown'" requiring hospitalization*. *Id.* at 198. As a result, *the plaintiff was treated by a psychiatrist for a period of over two years and was prescribed anti-anxiety medication*. *Id.* at 198. On that record, the district court remitted the award to $600,000. *Id.* at 201.

In *Katt v. City of New York*, 151 F. Supp. 2d 313 (S.D.N.Y. 2001), *aff'd sub nom.*, *Krohn v. N.Y.C. Police Dep't*, 372 F.3d 83 (2d Cir. 2004), the pervasive and sexually hostile work environment caused the plaintiff "*substantial and permanent* psychological damage." *Id.* at 371 (emphasis added). The plaintiff testified that she was subjected to "regular incidents of degrading and sexually provocative conduct, as well as unwelcome sexual advances, [which] caused her to suffer severe headaches, stomach ailments, diarrhea, increased upper respiratory allergies and infections," and that she felt "continually run down . . . [and] had trouble sleeping." *Id.* at 323. She also testified that she could not "'have an intimate sexual relationship like [she] used to.'"

Firm:45916373

*Id.* A *psychologist corroborated the plaintiff's claims of significant and continuing emotional distress*, testifying that the plaintiff was suffering from *post-traumatic stress disorder*, and that her *"'nonfunctional, barely functioning'"* state was *"'probably permanent.'"* *Id.* at 324. On that record, the district court upheld a jury award of $400,000 in emotional distress damages.

In *Phillips v. Bowen*, 278 F.3d 103 (2d Cir. 2002), the plaintiff "and her boyfriend testified in detail about her emotional distress, *physical* illness, and the effects of defendants' conduct on her *lifestyle and relationships*." *Id.* at 112 (emphasis added). The evidence was further corroborated by the testimony of several of the plaintiff's coworkers. *Id.* The court noted that the defendants testified "unapologetically" about their treatment of the plaintiff, finding that, the "defendants' animosity permeated plaintiff's work environment and their actions directly and adversely affected her daily working conditions in a substantial way." *Id.* at 110, 112. On that record, the Second Circuit upheld a jury's award of $400,000 in emotional distress damages.

Finally, in *Olsen v. Cty. of Nassau*, 615 F. Supp. 2d 35 (E.D.N.Y. 2009), the testimony of three individual plaintiffs regarding their significant emotional distress was corroborated in two instances by treating *psychologists*, and in the third instance by a plaintiff's *clinical social worker*. *Id.* at 47-49. Based on that substantial evidence, the district court upheld awards of emotional distress damages of $500,000, $400,000, and $100,000, respectively. *Id.* at 47, 49.[2]

---

[2] In *Hughes v. Patrolmen's Benevolent Ass'n of New York, Inc.*, 850 F.2d 876, 879, 883 (2d Cir. 1988), the court did not address the extent or nature of the evidence of the plaintiff's emotional distress and therefore offers no guidance here. Similarly, in *Sogg v. Am. Airlines*, 193 A.D.2d 153 (1st Dep't 1993), the court did not describe the evidence offered to support the plaintiff's emotional distress. Finally, in the *Town of Hempstead v. State Div. of Human Rights*, 233 A.D.2d 451 (2d Dep't 1996), the Second Department upheld compensatory damages awards ranging from $200,000 to $500,000 issued to six individual complainants who were subjected to "a pattern of extremely lewd and offensive conduct," *id.* at 452, but the case is inapposite because the award was issued by the NYSDHR Commissioner which, unlike a jury award, "is entitled to great deference because of the agency's special expertise in weighing the merit and value of discrimination claims." *Id.* at 453. Similarly, in *N.Y.C. Transit Auth. v. State Div. of Human Rights*, 78 N.Y.2d 207 (1991), *rev'g* 163 A.D.2d 315 (2d Dep't 1990), a sex discrimination case based on pregnancy, the Court of Appeals reversed the Appellate Division's reduction of the Commissioner's $450,000 compensatory damages award to $75,000. In addition to being entitled to deference, the Court found that the NYSDHR Commissioner's award was justified in light of the complainant's testimony "'at length and in convincing

4

Unlike the evidence in the cases cited Duarte, she relied upon her own highly subjective feelings expressed in vague and conclusory terms, without any supporting medical evidence. There was no treating or testifying psychiatrist or therapist, no prescribed anti-depressants or anti-anxiety medication, no "major stress attack" or "total breakdown" requiring hospitalization, no debilitating or permanent psychological damage, nor any other "extraordinary circumstances." Duarte's alleged anxiety was not severe enough to prevent her from working, or from continuing to attend the staff meetings each week for several years and sit down right next to her alleged harasser. Accordingly, Duarte's emotional distress falls squarely into the low end of the "garden variety" damages range.[3]

## II.   THE JURY'S PUNITIVE DAMAGES AWARD IS A MISCARRIAGE OF JUSTICE AND SHOULD BE VACATED IN ITS ENTIRETY OR, IN THE ALTERNATIVE, SUBSTANTIALLY REDUCED.

### A.  Duarte Cannot Have The Punitive Damages Jury Instruction Rewritten To Preserve The Jury's Award.

Duarte seeks to have the Court rewrite the jury instructions by eliminating the paragraph which describes where an employer may not be liable for punitive damages. Duarte did not object to the inclusion of this paragraph during the charging conference (Tr. 836:1 to 841:1), however, and she cannot have it rewritten now.

Relying upon *Zakrzewska v. New School,* 14 N.Y.3d 469 (2010), Duarte essentially argues that the paragraph of the instruction should either have not been given or should have

---

detail' that the Transit Authority's acts – done intentionally to hurt her –  caused her anguish, self-guilt, depression and anger at the time each occurred and that the mental distress persisted. . . ." *Id.* at 214.

[3] *Osorio v. Source Enters., Inc.*, No. 05-cv-10029, 2007 U.S. Dist. LEXIS 18725 (S.D.N.Y. Mar. 2, 2007), also cited by Duarte, is an outlier and of no significance.  In that case, the plaintiff was a public figure, the editor-in-chief of a well-known music industry magazine. *Id.* at *16-17. In a published interview, a former officer of the magazine – which had a readership of over two million people – publically humiliated plaintiff by accusing her of concocting a sexual harassment complaint in an attempt to extort defendants into guaranteeing her continued employment. *Id.* at *19. In upholding the compensatory damages award, the court relied on the fact that "plaintiff testified at some length about the emotional distress and damage to reputation caused by the retaliation, including how defendants' retaliation caused her to feel depressed and anxious and to feel embarrassed in front of others in the industry, as well as causing her difficulty during subsequent job interviews and professional events and the like." *Id.* at *15-16.

Firm:45916373

been rewritten because the Hospital was liable for punitive damages automatically once the jury determined that Quinnones engaged in discriminatory behavior.  Duarte misstates the holding of *Zakrzewska*, where the Court of Appeals was asked by the Second Circuit whether the affirmative defense to employer liability under Title VII articulated in *Faragher* and *Ellerth* applied to sexual harassment and retaliation claims under the NYCHRL.  14 N.Y.3d at 475.  The Court of Appeals did *not* conduct an analysis of the circumstances under which an employer might be liable for punitive damages; it merely held that the *Faragher* and *Ellerth* defense did not apply to the NYCHRL.  Duarte's assertion that *Zakrzewska* stands for the proposition that the employer always "is vicariously liable for punitive damages" when liability has been found based on a supervisor's conduct goes too far.  If that was Duarte's position, then she should have raised it during the charging conference.  Further, Duarte has not cited any case law to support her argument that, in the context of the mitigation of punitive damages under N.Y.C. Admin. Code § 8-107(13)(e), the Court may not find that the evidence of the Hospital's policies and procedures warranted a *total* mitigation of punitive damages.

### B.  Duarte Has Conflated The Hospital's Response To Her 2011 Performance Appraisal "Rebuttal" With The Events Surrounding Her 2013 Disciplinary Notice "Rebuttal."

Duarte argues that "[s]ince [the Hospital's] management is expected to take employee rebuttals seriously and read them all the way through, the jury's punitive damages finding is not a 'miscarriage of justice' sufficient to compel a new trial."  (Pl. Br. 29).  In making that argument, however, Duarte conflates the "rebuttal" section in the performance appraisal, a formal part of the Hospital's annual review process, with what she labelled "a rebuttal to a Discipline," which was not part of any formal human resources process.  Moreover, the argument gives credence to the Hospital's concern that it was unfairly prejudiced by Duarte's belated dismissal of her national origin discrimination claims because her lawyers had repeatedly

made the point that the Hospital had failed to respond appropriately to her alleged "complaint" of discrimination in the formal "rebuttal" to her 2011 performance evaluation.  (Def. Br. 21 n. 11).

Duarte's brief goes to great lengths to connect the two unrelated "rebuttals" (Pl. Br. 10-12).  According to Duarte, her written rebuttal to her 2011 performance appraisal made a claim of national origin discrimination, which "sheds light on the Hospital's procedures for reviewing and responding to rebuttals."  (Pl. Br. 10).  The appraisal contained a section for employee comments, which allowed employees to express concerns with their evaluation.  (PX-12; Tr. 99:16-18, 499:13-15).  Additionally, the Hospital's Employee Handbook expressly stated that an employee who "disagree[d] with any part of the evaluation … may write a written response in the appropriate section of the signature page."  (PX-7, SBH000882).  In the employee comment section, Duarte wrote "See attached Rebuttal."  (*Id.*).  In the attached rebuttal, she wrote that she "felt disappointed and discriminated by bias remarks of [her] culture and language."  (PX-13).  Arce-Tomala testified that the remarks in the appraisal ("[d]ue to cultural and language challenges Ms. Duarte at times struggles with grammatical errors") were not discriminatory; indeed, the sentence went on to compliment Duarte for "mak[ing] great effort to correct her work."  (PX-12, SB000345; Tr. 459:16 to 460:7).  Moreover, contrary to Duarte's mischaracterization of Webb's testimony, he testified that these comments had to be considered in their context before determining whether an investigation should have been conducted.  (Tr. 162:7 to 163:25). This evidence – more precisely, the total lack of evidence supporting the national origin discrimination claim – presumably led Duarte to voluntarily dismiss that claim as wholly without merit.

Nevertheless, Duarte goes on to argue that the evidence of Human Resources' "non-response" to the performance appraisal rebuttal supports the punitive damages award on the

disability discrimination claim.  She argues that the Hospital did not enforce its policy against discrimination because Arce-Tomala "was not made aware of this rebuttal" – meaning the rebuttal to the 2011 performance appraisal – even though "[r]ebuttals are placed in the employee's file" and "[i]n reviewing rebuttals, Human Resources typically investigated discrimination complaints like this."  (Pl. Br. 11).  But Webb never testified that documents such as Duarte's self-styled "rebuttal" to her 2013 discipline would be placed in the employee's Human Resources file; he was only asked about "rebuttals" to performance appraisals.  (Tr. 133:20-22).  Nor did he testify, as noted above, that there would have been any reason to investigate Duarte's objections to her 2011 appraisal if the circumstances showed that no further investigation was warranted.  (Tr. 119:3 to 120:20).  If, however, the jury accepted Duarte's theory that the Hospital failed to act appropriately in response to 2011 appraisal rebuttal, then it may have improperly concluded that punitive damages were warranted – even though the circumstances in 2011 had no connection whatsoever to those in 2013.[4]

### C.  The Punitive Damages Awarded By The Jury Are Excessive.

If the Court were to decline to vacate the punitive damages award in its entirety, then it should dramatically reduce them as they are grossly excessive.  In her opposition, Duarte does not contest the Hospital's analysis of two of the factors in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996), to be applied here: the proportion of punitive damages to compensatory damages and the difference between the punitive damage remedy and civil penalties authorized or imposed in

---

[4] As the Hospital stated in its initial brief, in deciding this motion, the Court "'is free to weigh the evidence [itself] and need not view [the evidence] in the light most favorable to [Duarte].'"  *Bouveng*, 175 F. Supp. 3d at 310-11 (quoting *Manley v. AmBase Corp.*, 337 F.3d 237, 244-45 (2d Cir. 2003)).  While Duarte erroneously argues that the Hospital has asked the Court to view the evidence in its favor (Pl. Br. 22), she Duarte seeks to have inferences drawn in her favor as to what the jury concluded (Pl. Br. 25-26). The Court can and should weigh the record evidence without drawing inferences for or against either party; doing so leads to the conclusion that an award of punitive damages constituted a miscarriage of justice.

Firm:45916373

comparable cases.  *Id.* at 574-75.  She only takes issues with respect to the first *Gore* factor, the degree of reprehensibility.

Most of the cases relied upon by Duarte on this point undermine her argument, however, as they involved much *lower* punitive damages than those awarded by the jury here. (Pl. Br. 32-33). In those cases in which the awards were higher, the evidence was egregious.  In *Salemi v. Gloria's Tribeca, Inc.*, 115 A.D.3d 569 (1st Dep't 2014), for example, the First Department upheld an award of $1.2 million in punitive damages based on evidence of discrimination and retaliation that was "extensive and corroborated by multiple witnesses." *Id.* at 569. The owner of the restaurant where the plaintiff worked as a chef and manager discriminated against her based on her religion and sexual orientation, including by holding mandatory weekly prayer meetings at the restaurant, repeatedly stating that homosexuality is "a sin," and that "gay people" were "going to go to hell," and "generally subjecting her to *an incessant barrage of offensive anti-homosexual invective*." *Id.* at 569 (internal quotation marks omitted) (emphasis added).  Further, the plaintiff suffered retaliation because she objected to the owner's homophobic comments, chose not to attend prayer meetings, and refused to terminate a co-worker on the basis of his sexual orientation; the owner's opprobrious conduct eventually caused the plaintiff to be constructively discharged.  *Id.* at 570.

In *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 256 A.D.2d 269 (1st Dep't 1998), the plaintiff was subjected to a pattern of sexual harassment, extreme verbal abuse, and *at least one instance of physical assault*. The plaintiff's co-workers frequently referred to her as a "bitch;" made sexually explicit comments to her; carved obscenities into her desk; ridiculed her pregnancy and miscarriage; and, in one instance, threw "a box of rotors" at her. *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 175 Misc. 2d 795, 798-99 (Sup. Ct. N.Y. Cty. 1997),

9

*aff'd in part, modified in part by* 256 A.D.2d 269 (1st Dep't 1998). Moreover, the defendant's own witnesses offered conflicting testimony as to whether the dealership even maintained a policy against sexual harassment. *Id.* at 799-800. On appeal, the First Department remitted the punitive damages award to $1.5 million, relying on the "egregiousness of defendant's misconduct" and the "wealth of defendant's parent corporation." 256 A.D. 2d at 271.[5]

Finally, Duarte accepts the 1.2:1 ratio of punitive damages to compensatory damages, and therefore has no reason to object to the Court's applying that same ratio after remitting the compensatory damages.

## CONCLUSION

For all the foregoing reasons, and those set forth in the Hospital's initial moving papers, the Court should grant the Hospital's motion for a new trial.

Dated: New York, New York        Respectfully submitted,
      April 9, 2018

                                  EPSTEIN BECKER & GREEN, P.C.

                                  By:    */s/ David W. Garland*
                                        David W. Garland
                                        John F. Fullerton III
                                        Adriana Kosovych
                                250 Park Avenue
                                New York, New York  10177-1211
                                Tel: (212) 351-4500
                                *Attorneys for Defendant*
                                *St. Barnabas Hospital*

---

[5] Duarte's reliance on *Greenbaum v. Svenska Handlesbanken*, 67 F. Supp. 2d 229 (S.D.N.Y. 1999), is also misplaced. There, management intentionally and repeatedly refused to promote Greenbaum because of her sex over a period of six years, explicitly in retaliation for filing a charge with the New York State Division of Human Rights, and ultimately terminated her employment in retaliation for filing her complaint. The district court upheld the jury's award of $1.25 million in punitive damages, reasoning that the purposes of deterrence would not be adequately served by a smaller award given the circumstances of the case, including the defendant's stipulated wealth. *Id.* at 272.

Firm:45916373