UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| RUTH DUARTE, | : **ECF** |
| Plaintiff, | : |
| – against – | : Case No.: |
| ST. BARNABAS HOSPITAL, | : 15-CV-6824 (PGG) |
| Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANT ST. BARNABAS HOSPITAL'S MEMORANDUM OF LAW OF
IN OPPOSITION TO PLAINTIFF'S MOTION
FOR ATTORNEYS' FEES AND COSTS**

EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, New York 10177-1211
(212) 351-4500
*Attorneys for Defendant*
*St. Barnabas Hospital*

Firm:46169470

# <u>TABLE OF CONTENTS</u>

Page(s)

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ........................................................................................................ 5

I.    THE HOURLY RATES SOUGHT ARE NOT REASONABLE RATES FOR
      ATTORNEYS WITH COMPARABLE EXPERIENCE IN THE SOUTHERN
      DISTRICT OF NEW YORK .......................................................................... 6

   A. Experienced Attorneys Should Receive $450 Per Hour. ........................... 6

   B. Associates Should Receive a Rate of $250 Per Hour. .............................. 7

   C. The Paralegal Should Be Compensated at $75 Per Hour. ......................... 8

II.   THE AWARD OF ATTORNEYS' FEES SHOULD NOT
      INCLUDE TIME THAT WAS NOT PROPERLY COMPENSABLE. ............. 8

   A. Duarte's Attorneys Should Not Be Awarded Fees for Work that Has Not
      Been Described With Sufficient Specificity to Enable the Court To
      Determine What Work was Performed by the Timekeeper. ......................... 8

      1.    Vague Individual Entries. .................................................................. 8

      2.    "Block" Billing ................................................................................. 9

   B. Duarte's Attorneys Should Not be Awarded Fees for Excessive, Redundant
      or Otherwise Unnecessary Work. .............................................................. 9

      1.    All Hours of Joseph and Gitlin Should Be Eliminated. ................... 9

      2.    If Unnecessary Attorney Time is Not Eliminated Entirely, It
            Should Be Reduced. ........................................................................ 13

      3.    Other Excessive Time Should Be Eliminated From the Lodestar
            Calculation. .................................................................................... 15

   C. Summary Of Hours That The Court Should Exclude From The Calculation
      Of the Lodestar. ...................................................................................... 16

III.  THE COURT SHOULD REDUCE THE PRESUMPTIVELY REASONABLE
      FEE BY 60 PERCENT IN LIGHT OF DUARTE'S LIMITED SUCCESS. .... 17

   A. Applicable Law. ...................................................................................... 17

Firm:46169470

B.  The Lodestar Should be Reduced By 60 Percent Overall To Account For Work On Unsuccessful and Dropped Claims. ................................................................... 18

IV.  ONLY $4,685.81 IN COSTS SHOULD BE AWARDED AS PLAINTIFF HAS NOT SUPPORTED HER APPLICATION WITH ANY EVIDENCE. ...................23

CONCLUSION ................................................................................................................24

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blum v. Stenson*,
465 U.S. 886 (1984)..................................................................................................6

*Castillo v. Time Warner Cable of N.Y. City*,
No. 09 Civ. 7044, 2013 U.S. Dist. LEXIS 58815 (S.D.N.Y. Apr. 24, 2013) .........18

*Farbotko v. Clinton Cty.*,
433 F.3d 204 (2d Cir. 2005)......................................................................................6

*Gonzalez v. Bratton*,
147 F. Supp. 2d 180 (S.D.N.Y. 2001), *aff'd*, 48 F. App'x 363 (2d Cir. 2002).......22

*Green v. Torres*,
361 F.3d 96 (2d Cir. 2004).......................................................................................18

*Hensley v. Eckerhart*,
461 U.S. 424 (1983).......................................................................................... *passim*

*Hine v. Mineta*,
253 F. Supp. 2d 464 (E.D.N.Y. 2003) .....................................................................20

*I.L.G.W.U. Nat'l Ret. Fund v. ESI Grp., Inc.*,
No. 92 Civ. 0597, 2003 U.S. Dist. LEXIS 626 (S.D.N.Y. Jan. 16, 2003).............23

*L.I. Head Start Child Dev. Servs. v. Econ. Opportunity Comm'n Inc.*,
865 F. Supp. 2d 284 (E.D.N.Y. 2012), *aff'd*, 710 F.3d 57 (2d Cir. 2013).............22

*LV v. N.Y.C. Dep't of Educ.*,
700 F. Supp. 2d 510 (S.D.N.Y. 2010)........................................................................9

*Marchuk v. Faruqi & Faruqi, LLP*,
104 F. Supp. 3d 363 (S.D.N.Y. 2015)......................................................... *passim*

*Millea v. Metro-North R.R.*,
658 F.3d 154 (2d Cir. 2011).......................................................................................5

*N.Y. State Ass'n for Retarded Children, Inc., v. Carey*,
711 F.2d 1136 (2d Cir. 1983)....................................................................................12

*Ng v. King Henry Realty*,
No. 16 Civ. 0013, 2016 U.S. Dist. LEXIS 142012 (S.D.N.Y. Oct. 7, 2016) .................6, 7, 14

Firm:46169470

*Port Auth. Police Asian Jade Soc'y of N.Y. & N.J., Inc.*
  *v. Port Auth. of N.Y. & N.J.*,706 F. Supp. 2d 537 (S.D.N.Y. 2010)........................................22

*McDonald ex rel. Prendergast v. Pension Plan of the*
  *NYSA-ILA Pension Trust Fund*, 450 F. 3d 91 (2d Cir. 2006) ...................................................18

*Reichman v. Bonsignore, Brignati & Mazzotta P.C.*,
  818 F.2d 278 (2d Cir. 1987)......................................................................................................23

*Reiter v. MTA N.Y. City Transit Auth.*,
  457 F.3d 224 (2d Cir. 2006)........................................................................................................6

*Robinson v. City of New York*,
  No. 05 Civ. 9545, 2009 U.S. Dist. LEXIS 89981 (S.D.N.Y. Sept. 29, 2009) ........................14

*Salama v. City of New York*,
  No. 13 Civ. 9006, 2015 U.S. Dist. LEXIS 88728 (S.D.N.Y. July 8, 2015) ........................ 6-7

*Separ v. Nassau Cty. Dep't of Soc. Servs.*,
  327 F. Supp. 2d 187 (E.D.N.Y. 2004) ..............................................................................18, 22

*Simmonds v. N.Y. City Dep't of Corr.*,
  No. 06 Civ. 5298, 2008 U.S. Dist. LEXIS 74539 (S.D.N.Y Sept. 15, 2008) ..............10, 13, 14

*Spalluto v. Trump Int'l Hotel & Tower*,
  No. 04 Civ. 7497, 2008 U.S. Dist. LEXIS 116424 (S.D.N.Y. Aug. 29, 2008) ..........7, 8, 9, 23

*Sullivan v. Syracuse Hous. Auth.*,
  No. 89 Civ. 1205, 1993 U.S. Dist. LEXIS 6343 (S.D.N.Y. May 2, 1993).............................12

*Tatum v. City of New York*, No. 06 Civ. 4290 (PGG),
  2010 U.S. Dist. LEXIS 7748 (S.D.N.Y. Jan. 28, 2010)...................................................21, 23

*Tlacoapa v. Carregal*,
  386 F. Supp. 2d 362 (S.D.N.Y. 2005).......................................................................................8

*Zimmerman v. Portfolio Recovery Assoc., LLC*, No. 09 Civ. 4602 (PGG),
  2013 U.S. Dist. LEXIS 174182 (S.D.N.Y. Dec. 12, 2013) ........................................12, 13, 23

**Rules**

N.Y.C. Admin. Code § 8-502(g)...................................................................................................5

iv

## PRELIMINARY STATEMENT

Plaintiff Ruth Duarte's Complaint pleaded nine causes of action comprised of *twenty separate claims* against defendant St. Barnabas Hospital (the "Hospital"), relying on various legal theories and unrelated facts, including disparate treatment and hostile work environment discrimination based on her national origin, race, gender and disability under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, as amended; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*; retaliation under Title VII, the ADA, and the NYCHRL; interference and retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; whistleblower retaliation in violation of New York Labor Law ("NYLL") § 741; and unpaid wage and overtime claims pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and NYLL.  All but one of those claims was unsuccessful.

On November 1, 2017, the Court dismissed Duarte's FMLA failure to accommodate cause of action as untimely after she agreed that it was time-barred.  (Docket Entry ("DE") 45).[1] In a Memorandum Opinion & Order dated September 13, 2017, the Court entered summary judgment on Duarte's claims for (1) disparate treatment discrimination under Title VII, the ADA, the NYSHRL and the NYCHRL on all of the bases she had alleged, *i.e.*, gender, race, national origin and disability; (2) hostile work environment under Title VII, the NYSHRL and the NYCHRL, to the extent they were premised on gender or race; (3) NYSHRL retaliation; and

---

[1] Indeed, at the pre-motion conference held on October 13, 2017, the Court questioned whether Duarte had a good faith basis to proceed with all of her claims and directed Duarte to submit a supplemental letter establishing that she had a good faith basis to oppose summary judgment.  (*See* Transcript of Pre-Motion Conference held Oct. 13, 2017, DE 43).

(4) FMLA interference and retaliation.  (DE 57).  The Court also dismissed Duarte's claims for unpaid wages and overtime under the FLSA and NYLL given her status as an opt-in plaintiff in a separate litigation, *Khansari v. St. Barnabas Hospital*, No. 15 Civ. 1803 (PGG).  (DE 57).  Thus, Duarte's Complaint was whittled down to the following claims:  (1) national origin hostile work environment under Title VII, the NYSHRL and the NYCHRL; (2) disability hostile work environment under the ADA, the NYSHRL and the NYCHRL; and (3) whistleblower retaliation under NYLL §§ 740/741. Trial on these remaining claims was scheduled to begin on January 22, 2018.

On December 28, 2017, Duarte voluntarily withdrew her demand for a jury trial on her NYLL §§ 740/741 whistleblower retaliation claims, and the parties agreed that the trial should be bifurcated such that the Court would decide her whistleblower retaliation claims.[2]  (DE 64). Although the scope of the case had been substantially narrowed by the dismissal of the majority of Duarte's claims, and Megan Goddard and Gabrielle Vinci had been serving as Duarte's only counsel in this matter from its inception, a third attorney, Bennitta Joseph, entered an appearance on Duarte's behalf on December 29, 2017, only a few weeks prior to the start of trial.  (DE 69).

As a result of the bifurcation of Duarte's claims, the parties prepared and filed two complete sets of pre-trial submissions, as the bench and jury trials would address factually and legally distinct claims involving different evidence.  Then, on January 15, 2018—one week before the trial date—Duarte advised the Court that she had decided to voluntarily dismiss her whistleblower retaliation claims (DE 107), they were dismissed with prejudice on January 17, 2018.  (DE 119).  That same day, Duarte retained a fourth attorney, Bruce Gitlin, to represent her

---

[2] The only claims to be tried to the jury were the remaining hostile work environment claims under Title VII, the ADA, the NYSHRL and NYCHRL, to the extent they were premised on national origin and disability.

at the jury trial on the remaining national origin and disability hostile work environment claims. (DE 115).

The jury trial began on January 22, 2018. In the first three days, Duarte called five witnesses to testify about matters pertaining to the national origin discrimination claims; twelve exhibits were received into evidence, eleven of which directly pertained to Duarte's national origin hostile work environment claims. On January 25, 2018, Duarte announced that she wished to dismiss her claims for national origin hostile work environment under federal, state and city law and dismiss her ADA and NYSHRL disability hostile work environment claims. That left only a single claim for disability hostile work environment under the NYCHRL remaining in the trial. (Trial Transcript 603:1 to 604:3; DE 140).

The jury returned a verdict in Duarte's favor on this sole remaining claim, and after the close of the trial, the Hospital filed a motion for a new trial pursuant to Fed. R. Civ. P. 59. (DE 163). Three weeks later, Stephen Bergstein joined Duarte's legal team to handle post-trial briefing, including Duarte's attorneys' fees application, despite (i) his lack of knowledge about the case or its procedural history and (ii) the extensions of time for filing the fee application that had been granted to Duarte based on the busy schedules and conflicts of her existing attorneys. (DE 166, 167, 172).

Duarte's attorneys now seek fees and costs that they incurred, including for the unrelated and unsuccessful claims, totaling $411,779.83. A review of the attorneys' fees application, however, shows over 473 hours that are not compensable under the applicable case law for various reasons, including:

- Fees should not be awarded where the application does not provide sufficiently detailed time entries to enable the Court to ascertain what work counsel performed and its reasonableness;

3

- Fees should not be awarded for excessive, redundant or otherwise unnecessary work; and

- Fees should not be awarded for time spent by Joseph, Gitlin, and Bergstein that was duplicative and/or unnecessary.

With the exception of the rate requested for Goddard, Duarte's attorneys also have not carried their burden to establish that the hourly rates they seek reflect the prevailing rates for comparable legal services in this District. If this Court declines to remove Joseph and Gitlin's time entirely from the calculation, then the appropriate rate for those attorneys is $450—the same as Goddard's rate. As to the rates for the associates and the paralegal staffed to this matter, cases in this District show that Vinci should be compensated at $250 per hour instead of the $350 requested. All hours purportedly billed by Tara Davis should be removed from this matter as there are no billing entries attributed to someone with that name in Goddard's affirmation; if permitted, however, a rate of $250 is also appropriate based on her level of experience. Finally, the unidentified paralegal should be reimbursed at $75 per hour instead of the requested $125 based upon similar awards in this District.

After adjusting the requested hours and rates to yield the "presumptively reasonable fee," the attorneys' fee award should be further reduced by 60 percent to account for the inordinate amount of work that Duarte's attorneys performed on discovery, motion practice, and trial time in support of unsuccessful and withdrawn claims.[3] This percentage reduction approach is mandated by the Supreme Court's decision in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), and Second Circuit precedent because the billing entries submitted to this Court do not separate work on successful versus unsuccessful claims.

---

[3] Duarte's attorneys request recovery for 85 percent of all pre-trial work and 100 percent of all work performed preparing for and during the trial, including work on claims that were voluntarily dropped and others that plainly were not inextricably intertwined with Duarte's sole successful NYCHRL claim.

4

For the foregoing reasons, the Hospital requests that the fee application be reduced from the requested $411,779.83 to $59,134.61.61 (inclusive of a reduced amount for costs).

## ARGUMENT

The NYCHRL states that a court "in its discretion may award the prevailing party costs and reasonable attorney's fees."   N.Y.C. Admin. Code § 8-502(g).   In calculating a "presumptively reasonable fee," often referred to as the "lodestar," courts in this Circuit generally begin by multiplying the appropriate hourly rate by the number of hours appropriately billed.  *Marchuk v. Faruqi & Faruqi, LLP*, 104 F. Supp. 3d 363, 366 (S.D.N.Y. 2015) (the lodestar method "multiplies the number of hours the prevailing party's attorney expended on the case by the reasonable hourly rate charged for similar work by attorneys of like skill in the jurisdiction.") (citation omitted); *see also Millea v. Metro-North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011).  Here, Duarte's attorneys unreasonably inflate both the number of hours they propose and their hourly rates; both should be adjusted for the reasons set forth below to determine the appropriate presumptively reasonable fee as a starting point.

Once that presumptively reasonable amount is calculated, an additional reduction to the requested attorneys' fees is necessary because of Duarte's limited success on the merits.  Even Duarte's counsel acknowledges that such a reduction is called for, though in an amount far less than what is actually appropriate.[4]  The excessive staffing and hours incurred by Duarte's attorneys for the single, straightforward claim that was submitted to the jury call for an additional reduction of 60 percent in fees after the lodestar is properly calculated.

---

[4]  *See* Pl.'s Br., (DE 179 at 4) recommending 15 percent reduction in hours spent pre-trial.

I.   **THE HOURLY RATES SOUGHT ARE NOT REASONABLE RATES FOR ATTORNEYS WITH COMPARABLE EXPERIENCE IN THE SOUTHERN DISTRICT OF NEW YORK.**

The proposed hourly rates for Vinci, Davis, Joseph, and Gitlin should be reduced (if Joseph and Gitlin's hours are not removed entirely) because they exceed the prevailing market rates in this District.  In evaluating the reasonableness of Duarte's attorneys' proposed hourly rates, the relevant inquiry is the prevailing rate for comparable legal services in the forum of the litigation, which requires a "case-specific inquiry into the prevailing market rates for counsel." *Farbotko v. Clinton Cty.*, 433 F.3d 204, 209 (2d Cir. 2005).  Such "hourly rates must be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'"  *Ng v. King Henry Realty,* No. 16 Civ. 0013, 2016 U.S. Dist. LEXIS 142012, at *7 (S.D.N.Y. Oct. 7, 2016) (quoting *Reiter v. MTA N.Y. City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) (alteration in original)).  "[T]he fee applicant has the burden of showing by 'satisfactory evidence – in addition to the attorney's own affidavits' – that the requested hourly rates are the prevailing market rates."  *Farbotko*, 433 F.3d at 209 (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).

A.   **Experienced Attorneys Should Receive $450 Per Hour.**

Goddard, the lead attorney who handled this matter from its inception, requests $450 per hour; this rate is in line with attorneys of similar experience and, therefore, all time spent by Joseph and Gitlin, who seek $600 per hour and $500 per hour, respectively – to the extent not eliminated entirely – should be charged at the same $450 hourly rate.  Courts in this District have found that experienced civil rights attorneys are generally compensated at rates in the $350-$450. *See, e.g.*, *Ng*, 2016 U.S. Dist. LEXIS 142012, at *9-10 (awarding a civil rights attorney with nineteen years of litigation experience $415 per hour and collecting cases); *Salama v. City of New York*, No. 13 Civ. 9006, 2015 U.S. Dist. LEXIS 88728, at *3 (S.D.N.Y. July 8, 2015)

6

("Rates found reasonable by courts in this District for experienced civil rights attorneys appear to cluster in the $350-450 per hour range.") (citation omitted).

Gitlin touts his 40 years of experience specializing in representing plaintiffs with hearing impairments as the basis for his $600.00 hour request.  The parties stipulated, however, that Duarte had a hearing impairment and there was no ADA failure to accommodate claim in this case.  (DE 128, at 8, ¶5).  Therefore, Gitlin employed none of this expertise in the course of his representation of Duarte.  Instead, Gitlin's only active role in this litigation was his examination of Duarte at trial.  The Hospital should not be required to pay a premium for special skills that were never utilized or needed.  Similarly, Joseph unnecessarily she served a role that overlapped with Goddard (she opened and closed and examined two witnesses); therefore, a rate of $450 per hour is also appropriate for Joseph's time if that time is not eliminated.

### B.   Associates Should Receive A Rate Of $250 Per Hour.

Vinci, who was only a *first-year* associate when this matter commenced, seeks an hourly rate of $350; her requested rate is unreasonable and should be reduced to $250 per hour.  *See Ng*, 2016 U.S. Dist. LEXIS 142012, at *11 ("Hourly rates awarded to attorneys with one to four years of experience in civil rights cases in this District tend to fall in the range of $175-$250 per hour.") (collecting cases); *Spalluto v. Trump Int'l Hotel & Tower,* No. 04 Civ. 7497, 2008 U.S. Dist. LEXIS 116424, at *40 (S.D.N.Y. Aug. 29, 2008) ("The proffered rate of $350 per hour is above the range of prevailing rates in this District for associates in small civil rights firms.") (collecting cases).  Davis's request of $400.00 per hour is also unreasonable.  As an initial matter, all of the purported five and one-half hours of time billed should be eliminated as there are no entries bearing her initials in the bills attached to Goddard's Affirmation.  If not eliminated, then an associate rate of $250 per hour is appropriate in light of her more limited experience.

7

### C.      The Paralegal Should Be Compensated At $75 Per Hour.

Duarte's attorneys seek payment of paralegal time at a rate of $125 per hour.  None of the

submissions in support of the fee request, however, contains any information whatsoever as to

the name of this paralegal or what his or her background or experience is; "[c]ourts have reduced

proposed rates for paralegals where such information is not provided." *Spalluto*, 2008 U.S. Dist.

LEXIS 116424, at *43 (reducing requested paralegal rate of $115 an hour to $75 an hour based

on typical rates and the fact that the plaintiff "has not submitted any information concerning the

paralegal's background and experience") (citing *Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 370

(S.D.N.Y. 2005) (reducing requested rate of $125 to $75 per hour where the plaintiff failed to

submit information about paralegal's experience).   Because there is no information supporting

the rate request, $75 per hour is reasonable for the paralegal hours on this matter.

## II.      THE AWARD OF ATTORNEYS' FEES SHOULD NOT INCLUDE TIME THAT WAS NOT PROPERLY COMPENSABLE.

### A.      Duarte's Attorneys Should Not Be Awarded Fees For Work That Has Not Been Described With Sufficient Specificity To Enable The Court To Determine What Work Was Performed By The Timekeeper.

#### 1.      Vague Individual Entries.

Duarte's attorneys' billing descriptions repeatedly lack the specificity required to be

compensable.   For example, the billing entries set forth in Goddard's Affirmation seek

compensation for "[r]eview of filings," "[c]ommunication with client," "correspondence with

client," "[p]hone call with client," and similarly vague tasks.  As shown in Exhibit A of the

accompanying Declaration of David W. Garland, Goddard's Affirmation contains such vague

entries for at least 19.9 of her hours and 23.5 hours of Vinci.  Accordingly, these entries should

be disallowed entirely or reduced by 75 percent.  *See, e.g.*, *Spaulutto*, 2008 U.S. Dist. LEXIS

116424, at *25-27 (reducing attorney's hours by 75 percent where entries such as "review

Firm:46169470

correspondence from opposing counsel" made it "impossible to discern the nature of [an attorney's] work").

>    2.    **"Block" Billing**

The same vague descriptions can be found in entries containing a description of multiple tasks in a "block."  As reflected in Exhibit B to the Garland Declaration, Duarte's attorneys billed at least 242 hours in "blocks" containing vague internal entries, such as entries for "review of file" and conferences, telephone calls, e-mails without a subject matter.  As the reasonableness of the hours billed for unspecified work is impossible to assess, the Hospital requests that the Court reduce these hours by 15 percent.  *LV v. N.Y.C. Dep't of Educ.*, 700 F. Supp. 2d 510, 525 (S.D.N.Y. 2010) ("[B]lock-billing can make it exceedingly difficult for courts to assess the reasonableness of the hours billed.") (citation omitted); *Spaulutto*, 2008 U.S. Dist. LEXIS 116424, at *22-23 (finding that substantial use of block billing and vague time entries warranted a 15 percent reduction of attorney's hours).

>    B.    **Duarte's Attorneys Should Not Be Awarded Fees For Excessive, Redundant Or Otherwise Unnecessary Work.**

The Supreme Court has held that attorneys are expected to exercise "billing judgment" and that district courts should exclude from a fee calculation hours that are "excessive, redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at 434.  As shown below, Duarte's attorneys' billing entries contain many excessive, redundant, or otherwise unnecessary hours on this case, which this Court should exclude from its calculation of any fee award.

>    1.    **All Hours of Joseph and Gitlin Should Be Eliminated.**

Duarte's case at trial was not a complex matter: she is a single plaintiff who asserted claims against a single defendant, and her claims present no novel or complex legal or factual issues.  In addition to the narrow scope and lack of complexity of this litigation, this Court "must

Firm:46169470

account for duplicative or repetitive work to ensure that the shifted fees represent only work that was necessary to the litigation and a cost efficient use of co-counsel and outside counsel." *Simmonds v. N.Y. City Dep't of Corr.*, No. 06 Civ. 5298, 2008 U.S. Dist. LEXIS 74539, at *20 (S.D.N.Y Sept. 15, 2008) (quotations and citations omitted).

One of the greatest excesses in hours arises from duplicative time spent by attorneys inserted on the eve of trial: Joseph and Gitlin.  As the Hospital presciently stated to this Court in its January 17, 2018 letter objecting to the late addition of Gitlin, after Joseph had been unnecessarily added: "should Plaintiff prevail at trial, she will seek to recover from the Hospital the attorneys' fees incurred by her trial team, which will be enhanced by the unnecessary addition of a third law firm."  Ex. C to Garland Declaration.  This is exactly what has transpired.

As set forth at length in her affirmation, Goddard and her associate Vinci handled this matter from inception and remained working on the case up through the completion of trial.  As Goddard attests, she has extensive experience litigating employment matters and has spent her 15-year legal career focusing on employment discrimination cases.  (DE 175 at 2).  Goddard further recounts how she has "represented countless clients before both [s]tate and [f]ederal [c]ourts" and how she has "had three trial victories in 2018," including two other matters that she handled "as lead attorney from inception."  *Id*. at 3.  Her affidavit also expounds upon Vinci's experience, including her appearances "before various federal and state courts" and Vinci's experience acting as "second chair" in several federal court trials.  *Id*. at 6.

Thus, by their own account, Goddard and Vinci were entirely capable of handling this straight-forward, single-plaintiff litigation through trial and in any post-trial motions, and the addition of Joseph and Gitlin was unnecessary.[5]  Neither Goddard's affirmation nor the

---

[5] The Hospital contemporaneously opposed Gitlin's appearance for that reason.  (Ex. C to Garland Declaration).

memorandum of law in support of the application for fees even attempts to explain why additional counsel was considered necessary to try this matter.  While Gitlin's Affirmation discusses his experience as the Executive Director of the New York Center for Law and Justice, which works exclusively on behalf of deaf and hard of hearing individuals, he does not discuss the ways in which his specialized experience was used in this case; indeed, it was not—the Hospital stipulated that Duarte had a hearing disability, and there was no ADA failure to accommodate claim remaining in the matter.  A specialized advocate for the hearing impaired was entirely unnecessary for this trial.  Instead, Gitlin's work at the trial was limited to simply his examination of Duarte with respect to the hostile work environment claim—a task Goddard was entirely capable of performing based on the experience she set forth in her affirmation.

Similarly, there were no special skills that Duarte required from Joseph that Goddard does not purportedly have, and, again, there is no attempt in Joseph's affirmation or the motion in support of the fee request to explain why her expertise was needed in lieu of Goddard or Vinci.  Reviewing Joseph's time billed to this matter reveals the amount of unnecessary and duplicative time that Joseph spent familiarizing herself with this matter only weeks before trial (*e.g.*, "Review Federal Amended Complaint" and "Review Model Jury Instructions") and engaging in unnecessary research that could easily have been completed by an associate at a much lower rate (*e.g.*, "Research example [b]usiness records exception to [h]earsay to determine admissibility of key documents."). (DE 177-1 at 1-2).  Overall, because Joseph was not needed to litigate this case, her time should be eliminated in its entirety as unnecessary.

Despite bringing on new, unnecessary counsel, Goddard and Vinci still did not delegate trial work; instead, they remained active in preparing for and trying this matter and seek 100

Firm:46169470

percent of those hours, representing an amount totaling $196,560.20 ($171,745.20 for Goddard and $24,815 for Vinci).

Where, as here, numerous attorneys are staffed to a "simple and straightforward matter" there is a "significant risk of inefficiency, duplication and unnecessary billing." *Zimmerman v. Portfolio Recovery Assoc., LLC*, No. 09 Civ. 4602 (PGG), 2013 U.S. Dist. LEXIS 174182, at *29 (S.D.N.Y. Dec. 12, 2013) (discussing matter wherein six attorneys billed time to a routine FDCPA case and noting that "assigning numerous attorneys to a simple and straightforward matter presents a significant risk of inefficiency, duplication, and unnecessary billing.") (citation omitted).  There is no information in any of the submitted affirmations or the memorandum of law in support of the fees motion discussing any attempts by Duarte's counsel to minimize duplication of efforts; a review of Exhibits D and E to the Garland Declaration demonstrates the many redundancies that took place due to the overstaffing of this matter.  Thus, this Court must determine whether the redundancy that "has occurred is the 'degree of effort reasonably needed to prevail in the litigation." *Id.* at 30 (quoting *N.Y. State Ass'n for Retarded Children, Inc., v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)).  In other words, this Court must ensure that the fee award reflects only work "necessary to the litigation" and represents "a cost efficient use of co-counsel and outside counsel.'" *Id.* (quoting *Sullivan v. Syracuse Hous. Auth.,* No. 89 Civ. 1205, 1993 U.S. Dist. LEXIS 6343, at *3 (S.D.N.Y. May 2, 1993)).

The record in this matter and the Exhibits attached to the Garland Declaration demonstrate that the overstaffing created the very inefficiencies that have compelled this Court to eliminate the time spent by additional counsel in cases such as *Zimmerman*: there is nothing about the scope or complexity of issues presented in this routine matter that warranted the number of hours expended on the litigation.  Like *Zimmerman,* six attorneys billed time to this

Firm:46169470

case for Duarte despite the fact that Goddard and Vinci were capable of handling this matter through trial and post-trial motions and remained entirely involved through the life-span of this case.  Accordingly, the attorneys' fees award should be adjusted to reflect an exclusion of all time billed by Joseph and Gitlin.  *See Zimmerman*, 2013 U.S. Dist. LEXIS 174182 at \*32 (reducing fee award to reflect only the time billed by the two attorneys and the paralegals who played the most central role in that litigation).  It is not fair to expect the Hospital to bear the cost of these unneeded attorneys, particularly where such hours likely would not have been spent if Duarte was responsible for the bill—"[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (citation omitted).

## 2. If Unnecessary Attorney Time is Not Eliminated Entirely, It Should Be Reduced.

In the even the Court does not conclude that the addition of Joseph and Gitlin was wholly unnecessary and, therefore, requires eliminating all of their time, their hours be reduced to eliminate the duplicative and unnecessary nature of their work.  The same request is made with respect to reducing the unnecessary time of Bergstein because his addition after the trial was concluded to draft post-verdict motions and this application for fees is unjustifiable.  Bergstein had no familiarity with Duarte's lawsuit and he needed to review the entire trial transcript in order to learn this case and the file.  (DE 178 at 3; 178-1 at 2).  As with the other unnecessary counsel, nothing in either the memorandum of law or Bergstein's affirmation that seeks to justifies his addition to the matter.

Other courts in this District have embraced this approach.  For example, in *Simmonds*, the plaintiff asserted claims against the New York City Department of Corrections and two individual defendants for gender discrimination, sexual harassment and retaliation under Title

13

VII, the NYSHRL and NYCRHL, and claims for intentional infliction of emotional distress and negligent hiring, retention and supervision.  The plaintiff was represented by the Women's Rights Project and the ACLU and, later, attorneys from the law firm of Steptoe & Johnson, LLP were brought into the litigation "because of the firm's expertise in federal litigation and trial practice."  *Simmonds*, 2008 U.S. Dist. LEXIS 74539 at *20.  In reviewing the application for attorneys' fees, the court stated that "such an arrangement would be palatable only if counsel were committed to ensuring that the total number of hours expended over the course of the litigation was not unreasonably increased thereby."  *Id*. at 21.  The relevant billing records, however, revealed that the delegation of tasks was rarely complete and was done without regard for any institutional advantages one firm might have over another.  *Id*.  Instead, "both firms were heavily involved in all aspects of the litigation … [and] [a]ttorneys from both firms routinely reviewed and revised each others' work product and jointly attended court conferences and meetings with clients and co-counsel."  *Id.* at 22.  As a result, the court determined that the total number of hours billed in the matter "substantially exceeded what was reasonably required to prosecute [plaintiff's] straightforward claims," and because of these inefficiencies, reduced the total number of hours requested by 40 percent.  *Id*. at 22-24 (citation omitted).

Other courts in this District "have generally frowned upon awarding fees to more than two attorneys for court appearances unless the case is uniquely complex."  *Ng*, 2016 U.S. Dist. LEXIS 142012, at *16-17 (straightforward nature of civil rights case meant that attendance of four to six attorneys at hearings was "clearly excessive" and reducing hours requested for attorneys' fees) (citing *Robinson v. City of New York*, No. 05 Civ. 9545, 2009 U.S. Dist. LEXIS 89981, at *25-26 (S.D.N.Y. Sept. 29, 2009) (finding attendance of three attorneys at routine conference and four attorneys at deposition to be excessive)).  Moreover, assignment of work

Firm:46169470

was not undertaken in a manner demonstrating that Duarte's attorneys were committed to ensuring that the total number of hours expended was not unreasonably increased.  For example, as set forth in Exhibit F of the Garland Declaration, Joseph spent 80.38 hours on general background in this case and for excessive or improper charges, such as five separate entries on January 21, 2018 that are all .6 hour increments to "review email from co-counsel regarding trial strategy."  (DE 177-1 at 4).    Similarly, Gitlin spent 36 hours on general background and unnecessary charges.  *See* Ex. G of Garland Declaration.  Bergstein spent 29.75 hours on unnecessary background review, administrative work, and improper charges, as set forth in Exhibit H of the Garland Declaration.

Finally, as shown in Exhibit I to the Garland Declaration, Goddard and Vinci spent 168.5 hours that are either entirely duplicative or redundant.  For example, Goddard has two time entries on February 16, 2016 of 1.5 hours for "Review of file, prepared mediation statement" and two duplicate entries in September 7, 2016 for "Conference with GV re: report of depo, settlement discussions."  The Hospital requests that the hours set forth in Exhibit J be divided in half to account for the unnecessary duplication.

Accordingly, a total of over 337 hours of redundant time should be deducted from the lodestar for the duplicative attendance and repeated work if this Court does not eliminate the time of Joseph and Gitlin entirely.  Fee shifting "is not a license to expend limitless resources on litigation simply because the defendant foots the bill. Such an approach would create perverse incentives to drive up the cost of litigation …." *Marchuk*, 104 F. Supp. 3d at 370.

### 3.    Other Excessive Time Should Be Eliminated From the Lodestar Calculation.

In addition to removing the hours discussed above, Exhibit I of the Garland Declaration sets forth additional excessive time entries that must be eliminated from the lodestar calculation.

Firm:46169470

/

For example, Vinci billed five hours on September 15, 2016 for Edgardo Quinones' deposition, but the actual deposition only took approximately two hours and 36 minutes.  *See* Ex. K to Garland Declaration.  Duarte's attorneys' fees request is also based on improper charges that are not even attributable to her case.  For example, there are entries seeking time spent speaking to potential new clients—"[p]hone call with potential client Evelyn Valentin"—and entries related to a mediation that did not occur in this case on the date indicated, January 5, 2018—"[p]repared for and attended mediation, review discovery schedule."  *See* Ex. J to Garland Declaration. Duarte also improperly seeks to shift time spent *researching* to find her unnecessary trial counsel and other administrative work that is not properly charged by an attorney to the Hospital.  *See* Ex. J to Garland Declaration. All of these hours should be removed from the calculation of a presumptively reasonable fee.

### C.  Summary Of Hours That The Court Should Exclude From The Calculation Of The Lodestar.

Given the above unreasonably expended hours, the Hospital requests that the Court subtract from Duarte's attorneys' fee application the following hours per the calculations discussed above:

|  | Megan Goddard | Gabrielle Vinci | Tara Davis | Bennitta Joseph | Bruce Gitlin | Stephen Bergstein | Paralegal |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |
| BILLED HOURS ACCORDING TO FEE APPLICATION | 397.16 | 202.1 | 5.5 | 163.98 | 71.1 | 81.25 | 21.2 |
|  |  |  |  |  |  |  |  |
| PROPOSED REDUCTION OF HOURS | 193.68 | 117.95 | 5.5 | 163.98 | 71.1 | 31.45 | 6.42 |
|  |  |  |  |  |  |  |  |
| 75% REDUCTION OF VAGUE ENTRIES | 14.93 | 19 |  |  |  | .5 |  |

|  | Megan Goddard | Gabrielle Vinci | Tara Davis | Bennitta Joseph | Bruce Gitlin | Stephen Bergstein | Paralegal |
|---|---|---|---|---|---|---|---|
| 15% REDUCTION OF "BLOCK" ENTRIES | 31.35 | 2.75 |  |  |  |  | 2.22 |
| DUPLICATIVE STAFFING (REDUCED BY 50% FOR GODDARD, VINCI, PARALEGAL) | 71.3 | 13 |  | 163.98 | 71.1 | 1.2 | 2 |
| ALL OTHER EXCESSIVE, INCORRECT OR IMPROPER HOURS | 76.1 | 83.2 | 5.5 | *80.38** | *36** | 29.75 | 2.2 |
|  |  |  |  |  |  |  |  |
| TOTAL HOURS REMAINING AFTER REDUCTIONS | 203.48 | 84.15 | 0 | 0 | 0 | 49.8 | 14.78 |
| APPLICABLE RATE PER HOUR | $450 | $250 | $250 | $450 | $450 | $450 | $75 |
| LODESTAR | $91,566 | $21,037.50 | $0 | $0 | $0 | $22,410.00 | $1,108.50 |
| ALTERNATIVE LODESTAR PERMITTING JOSEPH AND GITLIN | $91,566 | $21,037.50 | $0 | $37,620 | $15,795 | $23,782.50 | $1,108.50 |

*Excessive Hours for Joseph and Gitlin are in the alternative to removing them entirely.*

Based on the above table, the presumptively reasonable attorneys' fees total is **$136,122** without the duplicative time for Joseph and Gitlin; and **$190,909.50** if the time for Gitlin and Joseph is permitted but appropriately reduced.

## III. THE COURT SHOULD REDUCE THE PRESUMPTIVELY REASONABLE FEE BY 60 PERCENT IN LIGHT OF DUARTE'S LIMITED SUCCESS.

### A. Applicable Law.

As set forth in *Hensley*, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry." 461 U.S. at 434. Once the Court establishes the presumptively reasonable

fee—or lodestar—it can reduce the fee award if that award is not reasonable in light of "a plaintiff's limited success." *Marchuk*, 104 F. Supp. 3d at 366 (quoting *Castillo v. Time Warner Cable of N.Y. City*, No. 09 Civ. 7044, 2013 U.S. Dist. LEXIS 58815 (S.D.N.Y. Apr. 24, 2013)); *see also Hensley*, 461 U.S. at 436 (holding that where a plaintiff has achieved only partial success, the product of the hours expended on the litigation as a whole times a reasonable rate "may be an excessive amount.").

The lodestar amount discussed above is only a starting point; the fee award in this matter must be further reduced consistent with the guidance in *Hensley* and the case law of this Circuit because the fees remain excessive in relation to Duarte's limited success as compared to the hours expended by her attorneys. *See Separ v. Nassau Cty. Dep't of Soc. Servs.*, 327 F. Supp. 2d 187, 190 (E.D.N.Y. 2004) ("Where, as here, a plaintiff fails to succeed on a number of claims pled, a reduction in fees is usually warranted.") (citations omitted). In the alternative to combing through the record to identify and subtract the hours Duarte's attorneys spent litigating unsuccessful and withdrawn claims, this Court may "simply reduce the award to account for the limited success." *Green v. Torres*, 361 F.3d 96, 99 (2d Cir. 2004) (quoting *Hensley* 461 U.S. at 436-37). To do so, courts "use a percentage deduction as a practical means of trimming fat." *Marchuk*, 104 F. Supp. 3d at 367 (quoting *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F. 3d 91, 96 (2d Cir. 2006)). As Duarte's counsel recognizes, an additional percentage reduction is appropriate here, although in an amount much higher than that proposed by Duarte, based on the circumstances of this matter.

### B. The Lodestar Should Be Reduced By 60 Percent Overall To Account For Work On Unsuccessful and Dropped Claims.

Because Duarte did not prevail on several claims that were not factually or legally intertwined with her sole successful claim under the NYCHRL for hostile work environment

18

claim based on her disability, the Court should reduce the fee award by 60 percent, which fairly approximates the work expended on such unsuccessful claims.[6]  *See Marchuk*, 104 F. Supp. 3d at 369 ("When a plaintiff has … prevailed on fewer than all of [her] claims, the most important question in determining a reasonable fee is whether the failed claim was intertwined with the claims on which [she] succeeded.") (quotation and citation omitted).

There can be no dispute that Duarte's FLSA claims and whistleblower claims based on her termination can easily be divorced from her successful NYCHRL disability claim because those unsuccessful claims were grounded in "a core of facts and legal theories that are completely separate from those related to the successful claim[]."  *Marchuk*, 104 F. Supp. 3d at 369 (quotation and citation omitted).   For example, Duarte alleged that the Hospital was basing its patient treatment decisions on Medicaid reimbursement rates, and that she complained about being directed to stop providing group therapy sessions because the rate for individual sessions was higher.  A significant amount of deposition time was spent discussing the various types of sessions a clinician could provide and how treatment decisions were made.  Duarte also claimed that her termination was discriminatory based on her race and gender—claims that were dismissed on summary judgment; she never alleged that she was terminated because of her hearing disability, so all facts related to her termination were ultimately not relevant to her remaining NYCHRL claim before the jury.

Other courts in this District have adopted a 60 percent reduction when faced with analogous facts.  For example, in *Marchuk*, the plaintiff asserted hostile work environment and

---

[6] A review of the depositions in this matter further highlights the amount of time that was devoted to Duarte's many unsuccessful claims.  For example, approximately 13 percent (17 of 132 pages of deposition testimony), of the deposition time for Arce-Tomala and less than 10 percent of the deposition time for Duarte (20 of 201 pages of deposition testimony), Torres (10 of 111 pages of deposition testimony), and Quinones (8 of 123 pages of deposition testimony) was devoted to the hearing disability based claim; by these calculations a 60 percent reduction is conservative.

Firm:46169470

retaliation claims in violation of Title VII, the NYSHRL law and the NYCHRL, in addition to common law defamation and malicious prosecution claims against four defendants.  The plaintiff then withdrew her malicious prosecution claim and the court later granted judgment as a matter of law in favor of all defendants on plaintiff's retaliation and defamation claims and in favor of two defendants on plaintiff's hostile work environment claims.  Following a four-week trial, the jury found liability under the NYCHRL hostile work environment claim only.

Because plaintiff's failed claims of retaliation, defamation and malicious prosecution involved a core of facts and legal theories distinct from plaintiff's successful NYCHRL hostile work environment claim, the court held that plaintiff was not entitled to fees for work expended on those claims.  *Marchuk*, 104 F. Supp. 3d at 369.  As here, the billing records did not specify how much work related to failed claims and, as a result, the court held that a 60 percent reduction estimate was reasonable based on the amount of briefing on the unsuccessful issues.[7]  *Id.   See also Hine v. Mineta*, 253 F. Supp. 2d 464 (E.D.N.Y. 2003) (reducing lodestar by an additional 60 percent where plaintiff was only successful on two of her three causes of action against defendant under Title VII and in light of the damages awarded).

Duarte has proposed only a 15 percent reduction only up to the point of trial, which makes no sense given how much shorter the trial would have been without the national origin claim that was dropped mid-trial.  This suggested percentage is too low based on the facts of this case and it fails to account for the amount of time the attorneys devoted to Duarte's unsuccessful FLSA, NYLL, and gender and race-based claims, which were removed from the matter by the time dispositive motions were resolved.  Even more critically, the 15 percent proposal ignores the extensive time and effort expended on Duarte's whistleblower retaliation claims leading up

---

[7] Notably, the court stated that the plaintiff's NYSHRL and Title VII claims created duplicative work that was unnecessary from the beginning "given that the rights and remedies under the NYCHRL are co-extensive with or greater than those available under state and federal law."  *Id.*

Firm:46169470

to the trial, including separate pre-trial submissions, and, as noted, the amount of time devoted to her national origin hostile work environment claims, which were largely the subject of the first three days of trial (for example, the lengthy and repetitive testimony about performance evaluations and rebuttals thereto which had nothing whatsoever to do with the hearing disability claims)—unnecessarily extending its duration.   These claims are factually and legally distinguishable from her disability-based hostile work environment claim and are not "intertwined with the claims on which [she] succeeded."  *See Marchuk*, 104 F. Supp. 3d at 369.

Courts that have applied only a 15 percent reduction are distinguishable from this matter. For example, in *Tatum v. City of New York*, No. 06 Civ. 4290 (PGG), 2010 U.S. Dist. LEXIS 7748 (S.D.N.Y. Jan. 28, 2010), a plaintiff who alleged 13 causes of action related to an assault suffered while he was an inmate on Rikers Island argued at trial that an Officer aided and abetted or was deliberately indifferent to the assault.  Although the plaintiff prevailed on only 1 of his 13 original claims, this Court found that all but 2 of the original claims were "inextricably intertwined," in that they all arose from the same set of facts surrounding the assault, including claims for deliberate indifference, excessive force, conspiracy, assault, battery, and aiding and abetting.  The percentage reduction here should exceed that given in *Tatum* because after the summary judgment stage, Duarte's attorneys unnecessarily prepared for trial on the whistleblower and national origin discrimination claims before voluntarily dropping them.

Moreover, Duarte's unsuccessful whistleblower claims involved an "entirely separate" set of facts requiring extensive discovery into the hospital's billing practices, which were wholly irrelevant to Duarte's hearing disability hostile work environment claim.  Even Duarte's other discrimination-based claims involved different sets of facts than her disability-based hostile work environment claim.  For example, Duarte claimed that: male clinicians were assigned smaller

21

caseloads than female clinicians; a white, female clinician was not disciplined for similar infractions; and only non-Hispanic clinicians received laptop computers.  None of these factual allegations overlaps with her disability hostile work environment claim, which was grounded in the alleged comments of one individual.

In addition to *Marchuk* and *Hine*, discussed above, other courts have likewise applied a wholesale reduction to the lodestar in excess of 15 percent where the majority of claims were unsuccessful.  *See*, *e.g.*, *Port Auth. Police Asian Jade Soc'y of N.Y. & N.J., Inc. v. Port Auth. of N.Y. & N.J.*, 706 F. Supp. 2d 537, 541 (S.D.N.Y. 2010) (reducing the lodestar by four-elevenths in a Title VII discrimination case because four of the eleven plaintiffs failed to succeed on their claims and while "[c]ertain background evidence was relevant to all claims, … each plaintiff was required to introduce evidence sufficient to prove his own claims"); *Separ*, 327 F. Supp. 2d at 190 (reducing requested award by 40 percent where employee originally pled several causes of action but only achieved limited success); *L.I. Head Start Child Dev. Servs. v. Econ. Opportunity Comm'n Inc.*, 865 F. Supp. 2d 284 (E.D.N.Y. 2012) (reducing fee award by 35 percent where the plaintiff achieved only limited success in ERISA matter), *aff'd*, 710 F.3d 57 (2d Cir. 2013).

The facts and circumstances in this matter warrant an additional 60 percent reduction in the requested attorneys' fees for a total of $54,448.80 in fees with the exclusion of Joseph and Gitlin and $76,363.80 if Joseph and Gitlin's fees are permitted as detailed above.   That request is grounded in the number of hours spent by Duarte's attorneys on unsuccessful claims, many of which were dropped voluntarily, and is supported by decisions of other courts in this District under analogous circumstances.

**IV.    ONLY $4,685.81 IN COSTS SHOULD BE AWARDED AS PLAINTIFF HAS NOT SUPPORTED HER APPLICATION WITH ANY EVIDENCE.**

Duarte's attorneys bear the burden of demonstrating that the costs requested—here $9,371.63—are reasonable.  *Gonzalez v. Bratton*, 147 F. Supp. 2d 180, 211 (S.D.N.Y. 2001), *aff'd*, 48 F. App'x 363 (2d Cir. 2002).   Normally, only "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients" are permitted. *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987) (citation omitted).  That said, "[w]here an attorney fails to provide suitable documentation to substantiate the costs incurred, a court may decline to award any costs."  *Zimmerman*, 2013 U.S. Dist. LEXIS 174182, at *38 (quotations and citations omitted); *I.L.G.W.U. Nat'l Ret. Fund v. ESI Grp., Inc.*, No. 92 Civ. 0597, 2003 U.S. Dist. LEXIS 626, at *12 (S.D.N.Y. Jan. 16, 2003) (noting that failure to submit any bills or receipts substantiating such expense "can be fatal to a request for expenses.") (citations omitted).

Here, the request for costs is not substantiated by receipts or bills of any kind; instead, there is a brief section at the end of Goddard's affirmation that purports to substantiate the request.  The descriptions included therein are vague, unsupported, and most do not even include dates on which the costs were incurred.  For example, counsel seeks payment for "Taxi/Car Service" in the amount of $34.23, but presents no date for this service, does not indicate who, when or what this service was for.  Courts have found such vague requests to be unreasonable and will reduce or eliminate a costs award accordingly.  *See, e.g.*, *Zimmerman*, 2013 U.S. Dist. LEXIS 174182, at *41 (reducing costs by 50 percent); *Spalluto*, 2008 U.S. Dist. LEXIS 116424, at *54-55 (reducing requested costs for lack of supporting documentation and collecting cases); *Tatum*, 2010 U.S. Dist. LEXIS 7748, at *41 (stating that "[e]xpenses not supported by documentation will not be considered.") (citation omitted).   Even more troubling is a request for

reimbursement for a "Polo Car Service" on March 19, 2018—a request which makes no sense in light of the fact that no time was billed to this matter by any of Duarte's many attorneys on that particular date.  Attempts to claim reimbursement for matters unrelated to this litigation, whether intentional or inadvertent, should cast a shadow of doubt on the entire fee application and further support the Hospital's request for significant reductions.

Additionally, Duarte's attorneys seek $7,072.37 for "Transcript [sic]"—again without any details showing which transcripts these refer to—and for the reasons set forth at length above, excessive time was devoted in those depositions to claims that upon which Duarte did not succeed.  For these reasons, the request for costs should be reduced by 50 percent to $4,685.81.

## CONCLUSION

For all the foregoing reasons, the Court should not award attorneys' fees in excess of $54,448.80 (or, alternatively $76,363.80), and should not award costs in excess of $4,685.81.

Dated: New York, New York
      May 21, 2018

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

By:    /s/ *David W. Garland*
       David W. Garland
       John F. Fullerton III
       Adriana S. Kosovych
250 Park Avenue
New York, New York  10177-1211
Tel: (212) 351-4500
*Attorneys for Defendant*
*St. Barnabas Hospital*

Firm:46169470